FRANK HULETT v. O. J. HANCOCK.

No. 12,884.   ( 72 Pac. 224.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*New Trial—Misconduct of Jury.*
When a motion for a new trial, based upon the misconduct of the
jury, is heard upon both affidavits and oral testimony, and over-
ruled, and the misconduct relied on to impeach the verdict con-
sists of statements of matters not in evidence, made by the jurors
in the jury-room while considering their verdict, to warrant a re-
versal it must be shown that such prejudicial statements so made
were of positive facts within the knowledge, or asserted to be
within the knowledge, of the juror making them, and such as the
jury might receive as evidence of the fact asserted, and not as the
mere expression of opinion of the juror.

Error from Russell district court; LEE MONROE,
judge.   Opinion filed April 11, 1903.   Modified and
affirmed.

*L. B. Beardsley*, and *George W. Holland*, for plaintiff
in error.

*W. G. Eastland*, for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.:   This was an action in replevin
brought by Frank Hulett against O. J. Hancock to
recover possession of personal property consisting of
one bay mare and about twenty-two head of cattle, as
described in two chattel mortgages held by plaintiff
to secure a renewal promissory note given to him.
All the notes and mortgages bore the signatures of
the defendant and her husband, Frank Hancock, who
died before the commencement of this action.

At the time of the filing of the petition in this case
an affidavit and undertaking in replevin were filed.
A writ of replevin was issued and the property seized,

and the possession thereof delivered to plaintiff. A motion to quash the writ of replevin was interposed by defendant and sustained by the court, upon the ground that no summons was issued or served in the case. Upon the sustaining of this motion defendant demanded a trial of the rights of property, then in the possession of plaintiff, which request was granted. Thereafter defendant filed her verified answer, consisting of both a general denial and a special denial of the execution of the notes and chattel mortgages held by plaintiff; also a cross-petition alleging herself to be the owner of the cattle in controversy in the action. The trial resulted in a verdict in favor of plaintiff for the possession of the bay mare, and in favor of defendant for the return of the cattle in controversy, or their value. The costs of the action, amounting to about $200, were adjudged against plaintiff, and he brings error.

Complaint is made of the action of the trial court in sustaining the motion to quash the writ of replevin. As the possession of the property in controversy was, by virtue of the execution of the writ of replevin, in plaintiff, and as defendant requested and obtained a trial of the rights of the property in controversy without return of the property to her, plaintiff was not injured, and cannot complain of the ruling made.

The execution by defendant of the notes and chattel mortgages held by plaintiff and the ownership of the cattle were the controverted issues of fact under the pleadings. Defendant, as a witness in her own behalf, denied positively the execution of these papers. Upon this issue the jury found in her favor. In order, however, to divert the lien of the mortgage upon the cattle made by her husband, it devolved upon defendant to prove herself and not her husband the owner

of the cattle at the date of the mortgages.   To establish this ownership defendant introduced evidence tending to show that she had owned the cattle upon the farm occupied by herself and her husband for many years, and her acts of dominion over, and the control and disposition of, such cattle.   Of this testimony plaintiff complains.   In this, however, we find no error.

The principal controversy in the case arises upon the ruling of the trial court in denying the motion of plaintiff for a new trial.   In this motion misconduct of the jury was alleged.   In support of this motion one A. L. Edwards, a juror who participated in the trial of the case, testified as follows:

"After the first ballot in the matter had been taken by the jury, the juror J. A. Crabtree spoke in the presence of all the jury, and in a voice sufficiently loud enough to be heard and understood by the jury, the following language, in substance, to wit: 'That Hulett's original investment in the claim was probably very small, that most of it represents usury, and that the original loan was not more than $100 any way.' That divers other members of the said jury  .  .  . repeatedly said in the presence of the others of the jury, in a voice sufficiently loud enough to be heard and understood by them, the following language, in substance, 'That if any injustice was to be done either party, it would be best to find against Hulett, as he was well able to appeal, while she (meaning Mrs. Hancock) was not, as she is poor.' "

Another juror, I. W. Holl, testified as follows:

"Ques.  Did they speak of Mr. Hulett in there as a money-loaner; did they speak of Mr. Hulett in there as a money loaner and as a usurer—as taking usury? Ans.  I don't remember of the word 'usurer' being used; 'money-loaner,' I think.

"Q.  Did you hear some juror state in your presence and in the presence of the jury, 'that when a man

dies and Mr. Hulett holds a note against him, that it usually turns up for more than the amount in which the note was originally made,' or words to that effect? A. If I understood it, some such substance as that.

"Q. Give the exact language that was used in there in relation to that particular transaction—that talk to the jury. A. Well, it was one of the jurors made them remarks.

"Q. What did he say? Tell the court what he said. A. If I understood him right, he said it in this way, if I remember it—I suppose he meant in a case like this case where a party dies. He said : 'Where a party dies and Mr. Hulett had a claim against the property, it was usually more than what the papers called for,' or something to that effect."

There was other evidence of a like character, not in terms so positive. The foreman of the jury, J. A. Crabtree, testified :

"While it is probably true that this affiant and other jurors discussed the consideration in the original note, affiant did not pretend to state the amount of the consideration in original note. Affiant did not hear any juror say : 'That if any injustice was to be done either party, it would be best to find against Hulett, as he was able to appeal, while she, Mrs. Hancock, was not, as she is poor.'"

The amount of the indebtedness due plaintiff was not in dispute. Usury was not an issue in the case. The rule of this court permitting inquiry to be made of jurors as to what occurred in the jury-room, for the purpose of impeaching their verdict, is quite liberal. ( *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 4 Pac. 858 ; *The State. v. Woods*, 49 id. 237, 30 Pac. 520 ; *The State v. Burton*, 65 id. 704, 70 Pac. 640.) Hence, the inquiry made of the jurors in this case is sustained by precedent. A consideration of the adjudicated cases will show that extraneous matter introduced by jurors into their consideration of a verdict, which

heretofore has been held sufficient to overthrow the verdict, must be statements of prejudicial matters of fact outside the evidence, based upon the personal knowledge, or claimed personal knowledge, of the juror making such statement, which, from the nature of the statement made, the jury might accept as evidence of the fact asserted, and not the mere expression of opinion of the juror. (*The State v. Woods* and *The State v. Burton,* supra.)   Tested by this rule, we are inclined to the opinion that the statements here shown to have been made by jurors, while in their nature prejudicial and such as should not have been made in the jury-room, yet, as they are more in the nature of an expression of opinion of the jurors making them than a positive statement of facts within their knowledge or claimed to be within their knowledge, are not sufficient to overthrow the verdict rendered, the trial court having passed upon this evidence, consisting of both affidavits and the oral testimony of jurors taken in its presence, and upheld the verdict.

The only remaining question is the taxation of the costs to plaintiff.   These costs are large and were in the first instance taxed against defendant.   This order was set aside and the costs adjudged against plaintiff. It will be remembered that the defendant answered by both special and general denial, verified.   This answer cast the burden of proof upon plaintiff, not only to establish the due execution by defendant of the notes and mortgages set forth in his petition, but also his right to the possession of the property in controversy, or any portion thereof.   As to a part of the property, he was successful.   Under the code and the well established rule of this court such judgment en-

titled him to a recovery of costs. The order of the court adjudging costs against plaintiff must therefore be reversed. In all other respects the judgment will be affirmed. The costs of this court will be divided.

All the Justices concurring.