FRED H. MADISON, *Appellee*, v. THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY, *Appellant*.

No. 17,959.

SYLLABUS BY THE COURT.

1. MISCONDUCT OF JUROR—*Statement of Facts in Jury Room Not in Evidence.* A prejudicial statement by a juror to his fellow jurors, made as a positive fact and within his personal knowledge, will ordinarily be deemed sufficient ground for setting aside a verdict, but a statement by a juror to other members that he had heard a rumor to the effect that one of the parties to the action had made an offer of compromise, which was not accepted, and which statement was treated as a mere rumor by the jury and not as a fact within the personal knowledge of the juror who mentioned the rumor, is not sufficient to overthrow the verdict.

2. SPECIAL FINDINGS — *Proper Questions to be Submitted.* A litigant has a right to special findings on the ultimate facts in the case, but the court is not warranted in submitting questions which require the itemizing of such facts or which call for mere evidentiary matters upon which such facts were based.

3. DAMAGES—*Amount Does Not Indicate Prejudice or Passion.* Under the testimony it is held that the award of damages herein is not so great as to indicate that the verdict was the result of prejudice or passion.

Appeal from Sedgwick district court, division No. 1. Opinion filed February 8, 1913. Affirmed.

*Hyden J. Eaton, John A. Eaton, Dudley W. Eaton,* all of Kansas City, Mo., *R. L. Holmes, C. G. Yankey,* and *Chester I. Long,* all of Wichita, for the appellant.

*Houston & Brooks,* of Wichita, for the appellee; *F. W. Madison,* of Fairview, Okla., of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: Fred H. Madison recovered a judgment against The Kansas City, Mexico & Orient Railway Company, which has been brought here for review. He was a railway mail clerk, and his run was

from Wichita, Kan., to Altus, Okla., over appellant's railway. While performing his duty upon a train of appellant it was derailed and he sustained injuries to his knee, abdomen and kidneys. The derailment resulted from the defective condition of the track and the excessive speed of the train over such a track. The negligence of appellant is not denied, nor is liability for actual injuries contested, but it is contended that there was misconduct of the jury while considering the evidence, and that the award of the jury was so excessive as to indicate passion and prejudice. Some time after the case was submitted to the jury one of the jurors is said to have remarked that the railway company had offered, by way of compromise, to give Madison $5000 as damages. It appears that mention was made of an offer of compromise, but there is a dispute in the testimony as to whether any one stated as a positive fact that an offer had been made, or only that he had heard a rumor to that effect.

It has been held that to warrant a reversal because of the introduction of extraneous statements "it must be shown that such prejudicial statements so made were of positive facts within the knowledge, or asserted to be within the knowledge, of the juror making them, and such as the jury might receive as evidence of the fact asserted, and not as the mere expression of opinion of the juror." (*Hulett v. Hancock,* 66 Kan. 519, syl., 72 Pac. 224.)

(See, also, *The State v. Woods,* 49 Kan. 237, 30 Pac. 520; *The State v. Burton,* 65 Kan. 704, 70 Pac. 640; *Karner v. Railroad Company,* 82 Kan. 842, 109 Pac. 676.)

Whether the statement was made as a fact and within the personal knowledge of the juror making it was a question of fact for the trial court to determine, and upon the testimony of the jurors it expressly found that neither the juror, Steenrod, nor any other

50—88 KAN.

juror stated that an offer of compromise had been made in fact, but only that they had heard a rumor to that effect, and that the jurors treated it merely as an idle rumor, and further, that none of them claimed to have any personal knowledge that an offer of compromise had been made. The question in dispute is concluded by this finding of the trial court. (*Perry v. Bailey,* 12 Kan. 539; *The State v. Storm,* 74 Kan. 859, 86 Pac. 145; *Taylor v. Abbott,* 85 Kan. 198, 115 Pac. 979.)

The fact that the matter of compromise was mentioned in the jury room may have been due to the fact that one of the counsel for appellant referred to it in his opening statement to the jury, saying, in substance, that the appellant and the appellee had been unable to agree upon the amount he should receive for the injuries sustained.

In support of the claim that the award of $9000 to appellee was excessive and out of proportion to the injuries actually sustained, it is urged that the injuries did not render him unconscious at the time they were inflicted, that shortly afterward he was able to travel with the aid of a crutch and later with only a cane, that the postal authorities permitted him to draw full pay from the time of his injury until shortly before the trial, and that he was then given leave of absence with the privilege of reëntering the postal service at the salary he formerly received, to wit, $1300 per annum, and that afterward he did resume work on the train and is receiving the same compensation as he did before the injury. It appears that at the time of the injury he was twenty-five years of age, having been in the postal service about five years, beginning on a salary of $800, and that he was advanced from grade to grade until he received a salary of $1300, that his general health was then good, that promotions were open to him in which he would receive much larger com-

Madison v. Railway Co.

pensation, and his eligibility extended to and included that of general superintendent of the service. The testimony was that the injury loosened a piece of the cartilage which serves as a pad between the two ends of the knee joint which operated to lock the joint, and that to unlock it it became necessary to open the joint and remove a part of the cartilage. There is evidence that the injury permanently mars the function of the joint, and notwithstanding the operation he will never be able to straighten the leg and will necessarily be a cripple for life. The testimony tended to show, too, that his kidneys were seriously impaired by the injury. He did return to the postal service and upon a later motion for a new trial, on the ground of newly discovered evidence, testimony was offered that he had resumed work, had walked without a crutch and with little, if any, limp. This was met, however, by testimony that while he had recently undertaken to perform his work as mail clerk, it was only done with great pain and difficulty and by the aid of a co-employee who did the work that required him to be upon his feet, and that he had, in fact, given up hope of performing the duties of that place and had applied for lighter work at less compensation. Some of the physicians who reëxamined appellee about four months after the trial, and whose testimony was given upon the last motion for a new trial, stated that the appellee had grown worse, that his leg had shrunk in size and would grow worse as he grew older. They testified, too, that the reëxamination showed the injury to the kidneys to be permanent in character. There was testimony, it is true, that the injuries to the appellee were not serious nor permanent, but there is abundant testimony which seems to have satisfied the trial court that the injuries sustained are serious and permanent, and although a liberal award was made we can not say on the testimony accepted by the trial court that it was the result

of passion and prejudice nor hold that the verdict was so excessive as to require a reversal.

Error is assigned on the refusal of the court to require the jury to give more definite answers to special questions. To question No. 5, "What sum do you allow plaintiff on account of the injuries to his knee?" the jury answered, "$7,000," and finding No. 6 was that $2000 was allowed for injuries to his abdomen and kidneys. As will be observed, these two items constituted the full amount of damages awarded by the jury. In response to other questions the jury found that nothing was allowed for mental pain and suffering, nothing for loss of time or earnings up to the time of trial, nor for loss of time or earnings in the future. By question No. 13 the jury were asked if anything was allowed on account of permanent injuries, and the answer was, "Included in Answers Nos. 5 and 6." And question No. 14 was, "If you allow plaintiff anything on account of permanent injuries, please state for what injuries and in what amounts," and the answer was, "As stated in Answers Nos. 5 and 6." It is insisted that the jury should have been required to have answered questions Nos. 13 and 14 definitely and to have subdivided the elements entering into the award. These findings, in effect, declared that the injuries sustained were permanent in character, and that for permanent injuries to the knee $7000 was allowed and $2000 for permanent injuries to his abdomen and kidneys. Having eliminated, by other findings, mental pain and suffering, loss of time and earnings before the trial as well as in the future, there is little reason for a more detailed finding of the elements which constitute the permanent injuries to the knee and to the abdomen and kidneys. Something might very well have been allowed for loss of earnings in the future, but the jury probably concluded that, having awarded damages for permanent injuries, the loss of earnings

in the future was covered by that award. Under the law regulating special findings a party is not warranted in asking the itemizing of the various things that enter into each element of the damages awarded. As has been decided:

"A party is entitled to special findings as to ultimate facts, but has no right to ask for mere evidentiary matters nor to require the jury to file a bill of particulars on each fact." (*Matheney v. El Dorado,* 82 Kan. 720, 725, 109 Pac. 166; *Railway Co. v. Bricker,* 65 Kan. 321, 96 Pac. 328; *Williams v. Withington,* post, p. 809, 129 Pac. 1148; *Barker v. Railway Co.,* ante, p. 767, 129 Pac. 1151.)

What is termed the newly discovered evidence did not warrant the court in granting a new trial, nor do we find any prejudicial error in the record.

The judgment of the district court will be affirmed.