The State v. Luft.

---

No. 21,341.

THE STATE OF KANSAS, *Appellee*, v. GEORGE LUFT, *Appellant*.

No. 21,768.

THE STATE OF KANSAS, *Appellee*, v. HENRY LUFT, *Appellant*.

SYLLABUS BY THE COURT.

1. ASSAULT WITH INTENT TO KILL—*Cross-examination of Defendant—Impeaching Evidence Properly Received*. The defendant, on trial for assault with intent to kill, claimed he was endeavoring to apprehend the person assaulted for the commission of a crime, and sought to justify the force used. He testified on direct examination that the person assaulted fought him. On cross-examination he said the person assaulted fought him with a knife and cut him. He was then impeached by evidence that the wound was not made with a knife at all, and was suffered subsequently to the encounter and at a different place. *Held*, the impeaching evidence was properly received.

23—104 KAN.

2. SAME—*Verdict of Guilty—New Trial Granted—Order Granting New Trial Subsequently Set Aside—New Trial Denied—No error.* After verdict of guilty a motion for a new trial was sustained, and the cause was continued·to the next term. Subsequently, but at the same term, a motion to reconsider the ruling was entertained, and hearing of the motion to reconsider was postponed to a stated day of the next 'term. At the next term the motion to reconsider was allowed, and the motion for a new trial was reconsidered and overruled. *Held,* the court possessed power to pursue the course taken.

3. SAME—*New Trial—Authority of Court Over the Work of the Term.* Section 274 of the code of criminal procedure, providing that the granting of a new trial places the parties in the same situation as if no trial had occurred, has no reference to the power of the court during the term over the work of the term, and contemplates those orders granting new trials which ultimately become final orders on the subject.

4. SAME. Authority to revise proceedings during the term at which they occurred, includes authority to require the presence of the defendant whenever necessary.

5. SAME—*Misconduct of Juror—New Trial Properly Denied.* The proceedings examined, and held that a new trial, granted at first on the ground of misconduct of a juror, was properly denied.

6. SAME—*New Trial—Newly Discovered Impeaching Evidence.* The rule applied that a new trial will seldom be granted for the production of newly discovered impeaching evidence, and more rarely when the evidence relates to. a wholly immaterial matter.

7. SAME—*No Error in Record.* Various assignments of error considered, and held to be without substantial merit.

No. 21,341. Appeal from Rush district court; ALBERT S. FOULKS, judge. Opinion filed March 8, 1919. Affirmed.

*J. E. Andrews,* of La Crosse, *Carr W. Taylor,* of Hutchinson, and *Sam Jones,* of Lyons, for the appellant.

*S. M. Brewster,* attorney-general, *Frank U. Russell, W. E. Broadie,* county attorneys, and *J. W. McCormick,* special counsel, for the appellee.

No. 21,768. Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion filed March 8, 1919. Affirmed.

*J. E. Andrews, S. I. Hale,* both of La Crosse, *Carr W. Taylor,* of Hutchinson, and *Sam Jones,* of Lyons, for the appellant.

*S. M. Brewster,* attorney-general, *S. N. Hawkes,* assistant attorney-general, *Frank U. Russell,* and *W. E. Broadie,* county attorneys, for the appellee.

The opinion of the court was delivered by

BURCH, J.:   An information was filed in Rush county charging George Luft and Henry Luft with assulting James Neufeld with intent to kill.   Separate trials were demanded, and George Luft was tried, and convicted of the crime charged.   A change of venue was granted to Henry Luft, and he was tried in Edwards county, and convicted of assault with intent to commit manslaughter:   Because both convictions grew out of the same transaction, the two appeals were argued and submitted together.

Neufeld was hired at Great Bend, and was taken by automobile from that place to George Luft's farm near La Crosse, to work as a threshing hand. -The threshing to be done was delayed from Friday until Monday.   Meantime Neufeld was boarded at George Luft's.   On Sunday afternoon trouble occurred between Neufeld and the Lufts.   Neufeld. claimed the trouble originated over a comparatively trivial matter, and he announced his intention of leaving, which enraged the defendants.   There was, too, some question whether or not Neufeld's physical condition was such that he would be able to do much work, after the Lufts had been to the expense and trouble of bringing him from Great Bend and boarding him.   The defendants claim Neufeld was discovered in the act of commiting a bestial crime, and they undertook to apprehend him and deliver him to the authorities for prosecution.   Whatever the occasion, Neufeld fled.   The defendants pursued him for several miles, over hills, through fields, across ravines, along roads, and through fences, and finally overtook him.   When overtaken he was in an exhausted condition, and the defendants proceeded, not to reduce him to custody to be prosecuted, but to beat him with savage brutality with a club, to kick and stamp him, and to drive a horse and buggy over him while he was prostrate on the ground.   An automobile with several occupants arrived, and he was taken to La Crosse to a doctor. He was in a fainting condition when he arrivea at the doctor's office, and had to be restored before an examination could be made and the extent of his injuries ascertained.

Henry Luft's appeal will be considered first.

George Luft, at his own trial, related what occurred at the time of the felonious assault.   He said that Neufeld fought

him, and cut him in the abdomen with a knife. He was effectively impeached by evidence that the wound he claimed was made with a knife was produced by other means, at La Crosse, subsequently to the encounter. George was a witness at Henry's trial. He said again that Neufeld fought him, but so framed his testimony that no reference was made to Neufeld's use of a knife. On cross-examination the occurrence was probed, and in response to the question, "What did he fight you with?" he answered, "with his fists, with one fist and with a knife." In response to other questions he said Neufeld cut him, and described the wound. The state then impeached him, as it had done before. The contention is that the state was bound by the answers which it elicited on cross-examination, and that the impeaching evidence was improperly received. The cases of *The State v. Alexander,* 89 Kan. 422, 131 Pac. 139; *The State v. Sexton,* 91 Kan. 171, 136 Pac. 901; and *The State v. McLemore,* 99 Kan. 777, 164 Pac. 161, are cited in support of the contention.

The cases cited apply the rule that a foundation for impeachment cannot be laid by questions asked on cross-examination relating to matters collateral to the issue. In this instance the details elicited by cross-examination were not collateral at all. They were of the substance of the issue. The two Lufts were engaged in the execution of a common design —according to their story, the apprehension of Neufeld. They admitted the use of force, but claimed they were justified. By way of justification, the witness said that Neufeld fought him. By the term "fought" the witness summarized Neufeld's acts. The term was vague, and the cross-examination merely developed the witness' explication. Cutting with a knife was one of the acts which the witness included, and the situation was precisely the same as though he had said on direct examination that Neufeld cut him with a knife, in the manner described.

Two veterinary surgeons gave identical opinions respecting a subject concerning which their professional training clearly qualified them to speak. They had also made experiments relating to the matter. A third witness, who possessed other qualifications, had made experiments respecting the same subject, and was allowed to give his opinion, which coincided with that of the veterinarians. It is said he was not qualified. Pro-

fessional or technical knowledge was not necessarily required to qualify the witness to speak, and the court is inclined to think he was qualified. If he were not, the court will not assume that the jury took his opinion rather than that of the veterinarians; and in any event, the verdict of the jury was not rested on the testimony of this witness. It is urged with much vigor that it was error to admit the experiments. The record shows the experiments were not admitted.

Complaint is made that in cross-examination of witnesses produced by the defendant to show his good character, questions included assumptions of derogatory facts not in evidence. It was not possible the facts should be in evidence. There is nothing to show that the questions were not propounded in good faith, the answers were all favorable to the defendant, and the court instructed the jury to consider nothing but the answers. Consequently the complaint is groundless.

Misconduct of the jury is charged. It is said that one of the jurors, during the deliberations of the jury, made a statement of fact, based on his personal knowledge and outside the evidence, concerning a material matter. The statement related, not to the vital subject of the guilt or innocence of the defendants, depending on what occurred in the field where Neufeld was overtaken, but to the guilt or innocence of Neufeld, depending on what occurred at the Luft barn, some miles away. No matter what the motive which actuated the defendants in instituting their long chase of Neufeld, the ferocity of their violence when they overtook him was the product of criminal intent then and there manifestly entertained, and it is not very material just how the trouble at the barn originated. The knowledge which prompted the juror's statement was not peculiar to him, but was knowledge common to farmers, and on investigation it was disclosed that the statement was not one of fact at all, but was merely the expression of an opinion. The result is that the juror was not guilty of misconduct (*Hulett v. Hancock,* 66 Kan. 519, 72 Pac. 224), and in any event, the defendant's rights were not prejudicially affected. (*The State v. Farrar,* 103 Kan. 774, 176 Pac. 987.)

After the verdict of guilty had been returned, the court sustained a motion for a new trial, on account of the incident which has just been discussed. The state made application for a reconsideration of the motion for a new trial, and after a re-

consideration the order granting a new trial was set aside and the motion for a new trial was overruled. The defendant claims the court was without power to set aside the order granting the new trial.

The motion for a new trial was granted on July 6, 1917. The cause was continued to the next term, and the defendant's bond to appear at the next term was fixed. The bond was given on August 30. On September 4, the state filed its motion for reconsideration. Hearing of this motion was set for September 28. Notice of the motion and of the time of the hearing was duly served on the defendant. On September 28, the defendant appeared in person and by counsel, and hearing of the motion for reconsideration was continued until the first day of the next term. The term at which these proceedings occurred was kept open by adjournments subject to call. On November 19, the first day of the next term, the motion for reconsideration was allowed, and a second hearing of the motion for a new trial was appointed for December 10. On December 10, the hearing occurred, and the motion for a new trial was denied.

The plenary power of the court during the term over its orders and judgments is too well established to need buttressing by authority. The quality of finality is always conditioned by the possible exercise of this power, and the court may freely return to the proceedings, and correct, revise, amend, or annul them. In the case of *The State v. Meyer,* 86 Kan. 793, 122 Pac. 101, in which pertinent authorities are cited, the rendition of a second judgment, imposing a heavier penalty, would have been sustained but for the fact that the defendant had already served a portion of the first sentence. In the case of *The State v. Langmade,* 101 Kan. 814, 168 Pac. 847, action of the district court was approved setting aside a judgment of conviction, setting aside an order denying a new trial, and granting the defendant a new trial, although the defendant had taken an appeal to this court. Exercise of the power does not depend on who invokes it, whether the plaintiff or the defendant, and does not depend on the character of the order, whether in its nature intermediate or final; and the order granting a new trial remained in the breast of the court, subject to further consideration, for the prevention of error and the promotion of justice.

Taking cognizance of the motion to reconsider the ruling on the motion for a new trial reopened the case to that extent, and made the ultimate conclusiveness of the ruling to depend on the result of further proceedings.    Having thus, during the term, laid its hand on the ruling and placed itself in a position to withdraw the ruling should it see fit, the court could then continue the proceeding to the next term, as it did, without suffering loss of power.

Section 274 of the code of criminal procedure provides that the granting of a new trial places the parties in the same situation as if no trial had occurred.    (Gen. Stat. 1915, § 8190.) The purpose of the provision was, specifically, to forestall abatement of the second trial on a plea of former jeopardy, and, generally, to render inoperative for any purpose anything done or occurring at the first trial.    The provision has no reference to the power of the court during the term over the work of the term, and contemplates those orders granting new trials which ultimately become final orders on the subject.

Authority to revise proceedings during the term at which they occurred includes authority to require the presence of the defendant whenever necessary.    While no specific process is provided, a bench warrant would suffice if notice to appear should be disregarded.

There are other assignments of error, and other subdivisions of those assignments which have been noticed.    They have all been considered, and none of them is of sufficient importance to require separate discussion, much less a reversal.

George Luft's appeal furnishes little sound material for a judicial opinion, because so many of the multiplied assignments of error are made in the face of well-settled rules of law and practice, or else are too clearly inconsequential to deserve formal discussion.

Perhaps one grain of wheat in the two bushels of chaff was this: When Neufeld was hired he was not entirely sound physically.    He was taking medicine for something.    He denied that it was what the defense insinuated it to be, and he claimed he had suffered an accidental injury.    In a little biographical introduction to his testimony he said he left his home in Oklahoma in March, for Kiowa, Kan., where he secured work.    He worked in that county until after harvest, when he came north to Great Bend, where the Lufts found him and hired him.    At

the close of his direct examination he said he was not stout enough to work when employed by the Lufts, because he had received an injury in harvest—three ribs were broken loose from the sternum, which left him in pretty bad condition. On cross-examination he said he received his injury while driving a header, and gave the details. At the hearing on the motion for a new trial the defendants produced evidence indicating that the story of the header accident was a fabrication, and the defendant desires a new trial to prove it. The case of *The State v. Mounkes,* 91 Kan. 653, 138 Pac. 410, is relied on.

In the Mounkes case the newly discovered evidence bore directly on the subject of the truthfulness of the materially divergent accounts of the affray itself. In this instance the new facts are not even collateral to a material issue, because to be collateral a fact must be related to, although not strictly a part of, the main thing under investigation. The brutality displayed when the defendant beat Neufeld with the club, and when the horse driven by Henry Luft trod on Neufeld's back, was not justified on the ground of Neufeld's physical strength. It was justified on the ground he used a knife, a fabrication of the Lufts. The header-accident injury bore no relation to the injuries inflicted on Neufeld by the Lufts. The physician who examined Neufeld immediately after the encounter testified that he had a freshly fractured rib beneath a bruise on his back, below the shoulder blade. The physician also found indications that other ribs had been broken, and another physician, who was appointed by the court to examine Neufeld, testified that he found indications of former fracture of the ribs from the sternum; but there was no testimony attributing the old injuries to the Lufts. The Lufts themselves strongly contended that Neufeld suffered from physical disability, but they are not satisfied with his statement of the cause. Suppose Neufeld did falsify. The court has said on numerous occasions that a new trial will seldom be granted for the production of newly discovered impeaching evidence, and more rarely when the evidence relates to a wholly immaterial matter. It is not of the slightest consequence what was responsible for Neufeld's physical condition, and it would burlesque justice to grant a new trial to wrangle about it. Besides this, a new trial is granted because of newly discovered

evidence only when the evidence could not, with reasonable diligence, have been discovered and produced at the trial. Henry Luft, testifying for the defendant, and another witness for the defendant, said that Neufeld told them about the header accident before the trouble at George Luft's barn occurred. If the subject bore any substantial relation to the charge contained in the information, it ought to have been investigated before the trial. (*The State, ex rel., v. Creager,* 97 Kan. 334, 337, 155 Pac. 29.)

The limits of the court's discretion were not transgressed in the cross-examination of the defendant concerning his marital status, and if anyone was worsted by what took place, it was the state.

It developed on cross-examination that the defendant had been required to give bond to keep the peace. The testimony indicated that the proceeding to keep the peace was instituted because the defendant had assaulted and beaten one Philip Schwindt. The defendant desires a new trial to show by the record that he merely threatened to assault and beat Schwindt. Comment is unnecessary.

Henry Luft, a witness for the defendant, was asked, as a preliminary question, whether or not he knew one Martha Quimby, or Martha Strait, a notorious prostitute generally known about Rush county as Battle Axe. It is said the question assumed that Battle Axe was a prostitute, and authorities are cited to the effect that questions must not take for granted uncomplimentary facts. Aside from the circumstance that the question was preliminary, it merely identified fully the person inquired about. It appears, too, that the identification was not too minute, because Henry said he did not know whether it was a horse or a woman inquired about. He did afterwards admit that the woman kept house for him, he being a single man. The question preceded an inquiry about Henry's character as a fighting man, and he was asked if he and the woman were not arrested for assaulting, beating, and wounding one Chaddock, and if they did not plead guilty to the charge. He admitted that he pleaded guilty, but said the woman was not in the case, and that the record of conviction was wrong, according to his figures, if it showed that both pleaded guilty and were fined. It is said that all this was very prejudicial to the defendant. If it were, there was nothing erroneous about it.

The defendant admitted that he pleaded guilty to a charge of assault and battery on one Kennedy. He made offers to prove all the facts involved, in order to vindicate himself and Henry in the Kennedy and Schwindt cases, and he desires a new trial in order that he may do so. The court wisely concluded to stick to its business of trying the defendant for the assault on Neufeld. Besides this, these and other offers of evidence which was rejected were forgotten at the hearing on the motion for a new trial, and the evidence was not then produced. Certain evidence pertaining to the crime imputed to Neufeld was not newly discovered, was cumulative, and could, with due diligence, have been produced at the trial. The court was not compelled to appoint any number of physicians to examine Neufeld. It was not error to appoint only one. If the defendant did not like the testimony of that one, he need not have introduced it, and the court committed no error in telling the jury that the witness was a witness for the defendant, called out of regular order. The record discloses no application for a change of venue, and the showing made at the hearing on the motion for a new trial relating to the impossibility of a fair trial proved farcical. No error was committed in filling the panel of jurors, no disqualification of jurors was established, and the jurors were not guilty of misconduct. All other assignments of error are deemed to be without merit.

The judgment in each case is affirmed.