PEOPLE *v.* BEATH.

PEOPLE *v.* ONCIU.

1. CONSPIRACY—INDICTMENT AND INFORMATION—COMMON LAW.
   Information charging conspiracy to cheat and defraud and to obtain money from a municipal corporation by false pretenses which set forth illegal act complained of and time and place of the conspiracy *held*, sufficient as to form and to have charged an indictable offense at common law.

2. SAME—STATUTES—COMMON LAW.
   There is no distinction between conspiracy to commit an act unlawful 'at the common law and one declared unlawful by statute.

3. CRIMINAL LAW—NEW TRIAL—REVOCATION—TIME.
   Revocation of improvidently made order granting a new trial in prosecution for conspiracy *held*, within power of trial court where revocation was asked for within a reasonable time, 30 days from rendition of judgment of conviction by trial court sitting without a jury.

4. SAME—NEW TRIAL—REVOCATION—PREJUDICE.
   Defendants in prosecution for conspiracy *held*, not prejudiced in matter of revocation of order granting new trial by fact that only a few hours' notice was given orally instead of four days' notice presumptively required by court rule, where defendants' counsel had their witnesses in readiness, one of the counsel returned in time to cross-examine main witness for prosecution, it does not appear that defendants would have been in any better position and court stated motion for revocation was being heard at once because witnesses were being approached (Court Rule No. 10, § 2 [1933]).

5. SAME—APPEAL AND ERROR—VERDICTS—CONFLICTING EVIDENCE.
   Verdict, based on conflicting evidence, will not be disturbed on appeal.

6. Same—New Trial—Evidence—Conspiracy—Attorney.

Evidence in prosecution of several persons charged with conspiracy to obtain money from municipal corporation by false pretenses by fraudulent suit for personal injuries *held*, to entitle attorney implicated to new trial in view of closeness of question involved, and trial court had wavered in belief of attorney's guilt, first granting him a new trial and then revoking order.

7. Conspiracy—Evidence—Sufficiency.

In prosecution for conspiracy to obtain money by way of fraudulent suit against municipal corporation, evidence *held*, sufficient to establish guilt of one of the alleged conspirators beyond a reasonable doubt where evidence against him was wholly uncontradicted and he did not take the witness stand.

8. Same—Credibility of Witnesses—Perjury—Impeachment.

In prosecution for conspiracy to obtain money by way of fraudulent suit against municipal corporation, credibility of witnesses also mixed up in this conspiracy and other fraudulent cases and of one of them who was a confessed perjurer who had turned State's evidence in consideration of promise of immunity *held*, for jury or judge sitting as jury in absence of showing of a "knowing use" of perjured testimony in this prosecution or suppression of evidence that would impeach testimony of such witnesses.

Appeal from Recorder's Court for City of Detroit; Sweeny (Henry S.), J. Submitted June 11, 1936. (Docket No. 101, Calendar No. 38,500.) Decided October 16, 1936. Rehearing denied defendant Onciu December 9, 1936.

Duncan C. Beath, Adam Onciu and others were convicted of conspiracy to defraud. Reversed and new trial granted as to Beath, affirmed as to Onciu.

*P. J. M. Hally,* for appellant Beath.

*Leo W. Pigott* and *Philip H. Robinson,* for appellant Onciu.

*David H. Crowley,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, *Duncan C.*

*McCrea,* Prosecuting Attorney, and *William L. Brun-ner,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J.  Defendants Duncan C. Beath, Adam Onciu, Frank Sliva and Gregory Voinegu were charged with fraudulently conspiring, confederating and agreeing with Morton P. Overlin ''by false pretenses, subtle means and devices, to obtain and acquire unto themselves, of and from the city of Detroit, Department of Street Railways, a municipal corporation * * * the sum of $25,000 * * * and to cheat and defraud.''  No objection was made to the information.  Overlin pleaded guilty to the charge. The other four defendants waived trial by jury.

Sliva's automobile had collided with another car, and he and others were injured.  Sometime after the accident, he devised a scheme of fixing the liability on the street railway department of the city of Detroit because of the alleged faulty operation of a street car.  This was wholly a fabrication on Sliva's part, no street car having been involved in the accident.

One August McShosh first took Sliva to Anthony Nelson, an attorney, who instituted suit against the city.  Shortly before the trial, however, Nelson refused to proceed with the case and thereupon defendant Beath was substituted as Sliva's attorney.  The case came on to trial and resulted in a verdict of $7,000 against the city.  The verdict was based largely on the testimony of Overlin who confessed that he had perjured himself.  After Overlin pleaded guilty to the conspiracy charge, Beath moved the court to set aside the verdict in the civil case.

At the conclusion of the testimony in the instant criminal case, the case was continued for three weeks when, after the arguments of counsel, the court found

the defendants guilty of conspiracy to cheat and defraud. Sentence was deferred for over four months pending the hearing of a motion for a new trial. After the hearing on this motion, the court again deferred sentencing defendants Beath, Onciu and Sliva, without date, pending the outcome of a writ of error to this court. Sentence, however was suspended on Voinegu and he was discharged. In denying the motion for new trial, the court stated that no error had been shown, but that the motion was predicated largely upon the question of the weight to be given the testimony; that after carefully reviewing the facts, the court was convinced that the guilt of each and every one of the defendants had been determined beyond any reasonable doubt, although there had been some doubt in his mind as to defendant Beath. The court further stated that Sliva, since his trial and conviction, had been found to be insane and committed to a State hospital.

The following February supplemental motions for a new trial were made by defendants Beath and Onciu and taken under advisement. That of Onciu was accompanied by affidavits of himself and one Gladys Gotcheff. Onciu deposed that at a meeting in a tavern to which Overlin asked him to come, Overlin stated that he had perjured himself in the case, and that for the sum of $5,000, he would escape and not be available at the new trial. Gladys Gotcheff, a friend of Onciu's, deposed that at his request she also went to the tavern and from a seat nearby overheard the conversation as set forth in Onciu's affidavit. Beath's affidavit was based largely upon what he had heard from Onciu. On April 13, 1935, the court, without handing down any opinion, as far as the record shows, granted the motions for a new trial and vacated the judgment of guilty as to all de-

fendants. On the morning of May 13, 1935, the time
set for the new trial and within 30 days after the
order granting it, the prosecutor asked leave to file
a motion to vacate and set aside the order granting
the motions for a new trial on the ground that the
affidavits, upon which the motions for new trial had
been based, were false and contained gross misrep-
resentations. He stated that he desired until two
o'clock of that afternoon to file the motion in proper
form and that at that time he would be able to offer
proofs that would satisfy the court that the order
granting the new trial should be set aside and va-
cated. Mr. Beath thereupon stated that there was
an orderly way in which to make a motion and that
if the prosecutor had one based upon affidavits, a
copy should be furnished respondents who were en-
titled to a four-days' notice under court rules. The
court stated that when the motion was filed, respond-
ents would have the right to offer reasons for a
"stay" for the four-day period, but that he would
continue the case until two o'clock and give the prose-
cuting attorney the opportunity to file the motion
and that, otherwise, the trial would proceed. Beath
stated that Onciu's attorney, a State senator, was
desirous of being in Lansing that afternoon and that
if counsel were going to prepare a motion of that
kind, he undoubtedly must have it in mind. Onciu's
attorney asked if it would be safe for him to go to
Lansing that afternoon on the chance that the court
would grant respondents time to answer the motion.
The prosecutor replied that all of the defendants had
known for at least two weeks that the case was set
for that day; that the people had subpœnaed over 50
witnesses to appear in court and that he would be
prepared at two o'clock to offer the witnesses who
would prove the contentions set forth in his motion.

The court then stated that he was merely giving the prosecutor an opportunity to file a written motion and, if he did, the respondents would have the usual notice on a hearing and that a date would be set for the hearing on that motion. Upon the court's adjourning the case until two o'clock, Onciu's attorney stated that he could not be present that afternoon, but that he was leaving Mr. Beath and the attorney for another defendant to look after Onciu's interests in the meantime. In the afternoon, the prosecutor called attention to the fact that at the morning session, Onciu's attorney had stated that in the event that he was not present in the afternoon, Beath would take care of Onciu's interests. The court proceeded to take testimony in support of the prosecutor's motion. Several days were devoted to examining witnesses. Before the examination was concluded, Onciu's attorney had returned from Lansing and participated in the cross-examination of Overlin, the main witness. At the conclusion of the testimony on the motion, the court stated that the order granting a new trial had been based upon affidavits that Overlin would change his testimony; that the order had been made rather hastily without the intervention of the prosecuting attorney and that no one appeared for the people and that after hearing the testimony on the present motion, the court was satisfied that the order granting a new trial was made improvidently and that an order would be thereupon entered setting aside and vacating the previous order and a further order made denying the motions for new trial. The court further stated that he at no time had any doubt whatsoever as to the guilt of Onciu or of the others in the case; that he had no reasonable doubt of the guilt of Beath, but that since Beath was an attorney who had been practicing law many years

and had brought to court men of integrity and reputation as character witnesses, he had opened up the case with the hope that possibly the evidence as shown might be wrong. His final conclusion, however, was that Beath also was guilty. Voinegu was placed on probation for a period of 5 years; Onciu sentenced to not less than 2 years nor more than 5 years, and Beath to not less than 1 year and not more than 5 years, in Jackson State prison. Beath and Onciu have appealed from the judgment of conviction.

It is claimed that the defendants were found guilty of offenses unknown to the common law or to the statutes of this State. The information specifically charged a conspiracy to cheat and defraud and obtain money by false pretenses; it set forth the illegal act complained of, and the time and place of the conspiracy. It was sufficient as to form. The offense charged here is a conspiracy to cheat and defraud and obtain money by false pretenses. At common law, conspiracy to do an unlawful act was an indictable offense. There is no distinction between conspiracy to commit an act unlawful at the common law and one declared unlawful by statute. The contention of the defendants is without merit. See *People* v. *Knoll,* 258 Mich. 89; *People* v. *Tenerowicz,* 266 Mich. 276.

It is further claimed that the trial court had no right to set aside an order granting a new trial, even though improvidently granted and under a misapprehension of facts. We find no statute governing the situation. There is authority in other States that in the absence of a statute precluding the revocation of an order granting a new trial, such an order improvidently granted may be revoked. In some of these States, the time for granting such an order is

limited to the term in which a judgment is rendered. A revocation of the order was asked for within 30 days. It was brought to the court's attention within a reasonable time. See *Commonwealth* v. *Miller*, 6 Dana (36 Ky.), 315; *Johnson* v. *State*, 1 Okla. Cr. 321 (97 Pac. 1059, 18 Ann. Cas. 300); and *Gonzales* v. *State*, 38 Tex. Cr. 62 (41 S. W. 605). In *State* v. *Luft*, 104 Kan. 353 (179 Pac. 553), in setting aside the order for a new trial, the court stated, p. 358:

"The plenary power of the court during the term over its orders and judgments is too well established to need buttressing by authority. The quality of finality is always conditioned by the possible exercise of this power, and the court may freely return to the proceedings, and correct, revise, amend, or annul them."

It is further contended by appellants that the motion to set aside the order granting a new trial was erroneously granted because four days' notice was not given. Court Rule No. 10, § 2 (1933), provides for a four-days' notice, and further that, for good cause, the court may hear such argument on shorter notice. The court at first did say that a four-days' notice would be given, but later stated that the matter would be taken up at two o'clock that day. In the afternoon counsel objected to proceeding without proper notice whereupon the court stated that he was hearing the motion at once because witnesses were being approached and that "if there is any further effort to see anybody or talk with anybody before their testimony is in, I want to hear that testimony now." Thereupon Mr. Beath stated: "I heartily agree with that."

While, as a rule, a four-days' notice is required and none was given in the instant case, irrespective of whether there was good cause shown to justify the

court in proceeding on the oral notice of only a few hours, and the claimed irregularity of the proceeding, we find that defendants were not prejudiced by the shortness or form of the notice. Defendants' counsel had their witnesses in readiness on the afternoon of May 13, 1933, and furthermore Onciu's attorney returned from Lansing in time to cross-examine Overlin, the main witness for the prosecution. It does not appear that defendants would have been in a better position to refute the allegations in the motion, nor do they make any such claim. No prejudice was shown to have resulted. *People* v. *Gray*, 264 Mich. 155, 157.

The only remaining error assigned that requires serious consideration is whether the judgment was against the weight of the evidence. We shall consider the evidence against the two appellants separately. Defendant Beath did not begin the litigation in the civil suit; it was brought to him by Onciu almost on the eve of trial. For two years prior to the trial in the circuit court, Sliva had been approaching witnesses to testify falsely, but none of these witnesses, except one McShosh and Overlin, even attempted to connect Beath at any time with those activities. The only testimony of McShosh that would have even a remote tendency to impute bad faith on the part of Beath was with reference to the occasion before the trial when he (McShosh) told Sliva in the presence of Beath to tell the truth about the case and Beath was alleged to have turned pale. At most, this would only be a suspicious circumstance insufficient to charge Beath with guilty knowledge. In any event, this circumstance was adequately rebutted by one Lawlor's testimony to the effect that during the trial Lawlor and Beath tried to find out the truth from Sliva as to whether he gave a $1,000 note to a Mrs.

Barras as a bribe to give false testimony or as "security" for board. Witness Overlin's testimony regarding the first date on which he had occasion to talk to Beath about the case was contradictory at times, but he swore that on January 6, 1934, all the defendants met in the office of Mr. Beath and then and there made final arrangements for the trial of the case; that on that date Beath handed him a letter which was antedated November 20, 1933, so as to make it appear that Beath had sent for him to come to his office; further, that Beath had prepared and at that time gave him a statement which he signed and which contained the false facts to which he was to testify; that Beath also handed him a brown notebook and had him sign his name in pencil therein for the purpose of enabling him to testify that he had written his name in the book on the night of and at the scene of the accident; that he also entered into a general discussion of the case with all of the respondents, including Voinegu. Overlin wavered as to the first time he had ever met Beath, but finally identified January 6, 1934, as the date on which the letter, statement, etc., were given to him. In rebuttal, however, some half a dozen reputable witnesses testified that they were in Beath's office on November 22, 1933. Some of them saw Overlin there on that date; others testified that Beath was typewriting a paper in the outer office and they saw Overlin seated in the inner office. One witness saw the statement after it had been signed by Overlin sometime prior to December 20, 1933. The testimony of other witnesses is very convincing that Voinegu, who, according to Overlin's story, was supposed to have been present on January 6, 1934, could not have been there. Reputable witnesses also testified as to the good character of Beath. We are not unmindful of the rule that a *verdict* based on conflicting evidence will not be dis-

turbed on appeal. *People* v. *Blanchard,* 136 Mich. 146; *People* v. *Hubbard,* 92 Mich. 322. However, in view of the closeness of the question involved in the case of defendant Beath, and the further fact that the trial judge himself wavered in his belief as to Beath's guilt, we feel that defendant Beath should be accorded a new trial.

We find no error, however, in the judge's conviction of Onciu. A Mrs. Geisinger, who had been injured in the accident, testified as follows:

"I testified first time on the case answering just the questions I was asked for. I did that because Mr. Onciu just asked me to prove that the city, they had a case with the city and the city was denying there ever had been any accident at the place and they just asked me to come there and answer just for the questions as to prove there was an accident, so I didn't speak any more, just answer the questions that I was asked and furthermore I didn't know anything about the case; * * * Mr. Onciu didn't ask me to answer just the questions. He told me to prove that there was an accident and all I did was to just answer the questions I was asked on the stand."

Witness McShosh testified as follows:

"I met him (Onciu) in the office and I discuss the case again with him. * * * I said, 'Adam,' I said, 'awful bad case, you know everything about it?' and he said, 'Yes.' * * * He told me that Mr. Nelson is not a good damage lawyer at all but he said, 'I can fix the case in good shape.' Mr. Onciu said that. 'And we can get together and get a good judgment on it.' "

McShosh further testified to the following conversation which took place during the trial of the Sliva case in the circuit court:

" 'Adam, what kind of a mess you do here?' I say, 'They haven't seen the accident as much as you did

or I.' He said, 'Well, I am going to tell you I have got good witnesses and if necessary I am going to put 20 more on it.' I said, 'You are going to get trouble,' and he said, 'Keep your mouth shut, I am going to take care of you.' "

Overlin testified that Onciu asked him to come to his office at a time certain and after pointing out the details as to how the accident was supposed to have happened, asked him to come to court and testify that he saw the accident as claimed by plaintiff. Overlin positively asserted that Mr. Beath was in no way involved in this conversation. Onciu was not himself a lawyer, but occupied an outer office in Beath's suite and his name appeared on the door separated by a dash from that of Beath and another lawyer. Onciu did not take the witness stand, nor was he obliged to, but as this evidence against him was wholly uncontradicted, we cannot disturb the finding of the trial judge that the evidence against Onciu was sufficient to establish his guilt beyond a reasonable doubt. On the hearing of the motion for new trial, Overlin not only contradicted the testimony of Onciu and the other witnesses as to what happened at the tavern, but he also showed that he was acting under the instructions of detectives of the Detroit police department whom he first interviewed before meeting Onciu. At the hearing on the motion, the latter again did not take the witness stand nor was he obliged to.

Appellants stress the claim that neither McShosh nor Overlin is worthy of belief; that McShosh's testimony shows that he connived with Sliva in securing witnesses to testify falsely; that he had also been mixed up in other fraudulent cases and that his memory was poor so that he was unable at times to furnish testimony on important matters. Appel-

lants further call attention to the fact that Overlin was a confessed perjurer, that he pleaded guilty to the conspiracy charge, and further, that he turned State's evidence in consideration of a promise of immunity. There is no showing, however, that there was any "knowing use" of perjured testimony by the prosecution nor any suppression of any evidence that would impeach the testimony of these witnesses. The case therefore does not fall within the rule laid down in *Mooney* v. *Holohan,* 294 U. S. 103 (55 Sup. Ct. 340, 98 A. L. R. 406). The question of the credibility of the witnesses was one properly for the consideration of the jury or the judge sitting as a jury.

The judgment against Beath is set aside and a new trial granted; that against Onciu is affirmed.

NORTH, C. J., and FEAD, WIEST, BUSHNELL and SHARPE, JJ., concurred. POTTER and TOY, JJ., did not sit.