ATHERTON *v.* DEFREEZE.

1. EVIDENCE—CONVERSATIONS—ADMISSIBILITY.
    In an action of replevin, a witness for plaintiff testified to a conversation with defendant in which the latter made statements tending to rebut his claim of title to the property in controversy. On cross-examination the witness testified that defendant also said that he was so blind he could not see, and that, if he should lose the suit, he would go to the poor-house. *Held,* that the last-mentioned testimony was inadmissible, though relating to the same conversation, since it had no connection with the issue involved.

2. TRIAL—MISCONDUCT OF COUNSEL.
    Where defendant's attorney paid no attention to the rulings of the court, repeated questions that had been ruled out as improper, made unwarranted statements reflecting on the character of plaintiff's witness, tried to make himself a witness by remarks not justified by the evidence, and appealed to the jury for mercy, addressing them as "boys," a judgment for defendant should be reversed.

Error to Shiawassee; Smith, J. Submitted January 7, 1902. Decided January 28, 1902.

Replevin by John J. Atherton against Aaron Defreeze. From a judgment for defendant, plaintiff brings error. Reversed.

*A. J. Kellogg* (*John T. McCurdy,* of counsel), for appellant.

*Martin V. B. Wixom,* for appellee.

GRANT, J. This is an action of replevin for two horses, and originated in justice's court. Plaintiff derived his title from one Susan Whitman by a bill of sale. Defendant owned a farm and was unmarried. Mrs. Whitman, who was married, lived with defendant as his housekeeper. She testified that she was employed at $2 per week, and he

testified that the arrangement between them was: "Mrs. Whitman and I agreed to live together as long as we lived, and after I was dead she was to have what we had left."

The title to the horses was the issue, and upon this the testimony was conflicting. There are 66 assignments of error, nearly all of which pertain to the rulings of the court in admitting and rejecting testimony. The comments made in *Boydan* v. *Haberstumpf, ante,* 137 (88 N. W. 386), apply with equal force in this case. The proceedings from the beginning to the end of the trial constitute a " comedy of errors," rather than the orderly trial of a lawsuit. To the rulings of the court the attorney for the defendant seemed to pay no attention, as the following instance will illustrate: Upon the cross-examination of Mrs. Whitman the same question was repeated to her three times, notwithstanding the court each time ruled the question as incompetent, and the ruling was correct. The sole purpose of the question was to prejudice the jury. A severe reprimand, if nothing more severe, should have been administered. The same witness was asked if defendant's farm was not sold before she went to New York State. Objection to the question as incompetent and immaterial was sustained, whereupon the defendant's attorney said: "It is important, as I stated to the jury. She stayed with him until the farm was gone, and then abandoned him." There was no foundation for this remark. The rule for impeaching a witness by proving contradictory statements was wholly ignored, within the rule of *People* v. *Riede,* 121 Mich. 700 (80 N. W. 796), and many other cases.

One Miller, who formerly owned the horses, testified that he sold them to Mrs. Whitman, and that, after the suit was brought, he had a conversation with defendant; that defendant asked him what he knew about the case; that witness told him that, at the time of the sale, defendant said that the cows, for which he exchanged the horses, belonged to Mrs. Whitman; and that defendant said it looked as though he would get beaten. On cross-exami-

nation by the defendant's attorney, the witness, in reply to the question, "What else did he say?" said: "He said he was so blind he couldn't see; and I asked him about how much the colts were worth, and he said about $300, and, if he didn't get them, he would go to the poorhouse." Plaintiff's attorney moved to strike out the answer as incompetent, immaterial, and not relative to the issue. The court denied the motion; holding the answer "competent as testing the recollection of the witness, and as a conversation between him and the defendant." The motion should have been granted. A witness' recollection cannot be tested by introducing irrelevant and immaterial matters. Parts of a conversation, having no reference whatever to the issue upon trial, are not admissible under the rule that a party is entitled to the entire conversation. The rule means only that he is entitled to the entire conversation bearing upon the subject in controversy. Ten subjects may be talked about in one conversation. When one of the ten is the subject of litigation, it is not competent to put in evidence the conversation about the other nine. Defendant's blindness and poverty had nothing to do with the title to the property. The case of *Lichtenberg* v. *Mair*, 43 Mich. 387 (5 N. W. 455), cited and relied upon by defendant to support the ruling, well illustrates the rule: The cross-examination was directed to what was said in regard to the subject which the witness had testified to on his direct examination, and which was material.

Some of the remarks of the attorney for the defendant were wholly unjustified. Mrs. Whitman had been to California with her brother, who paid her fare. She lived there about seven months, and brought back $70 or $80. The attorney said to the jury: "What old heart do you think it is aching in California?" There was nothing in the record to justify this remark.

It appeared in evidence that Mrs. Whitman had at one time consulted the attorney for the defendant in regard to her ownership of the horses, and had corre-

sponded with him about it.    Two of his letters were produced.    The attorney, in his address to the jury, read them, and said:

"That is just such a letter as any lawyer on the face of the earth would write, not knowing anything about the circumstances.    Here is another letter, in which I told her it might be necessary to give a bond or execute a bill of sale. Now, it appears there must be some reason why I dropped that case right there.    *   *   *   I don't remember what that woman wrote to me.    I haven't any more idea about it than anything in the world."

He was not a witness, but endeavored in this manner to make himself one.    In concluding his address he said:

"I have done my duty by the old man, and I am going to turn him over to you now.    I will just say to you right now that this is an important matter to that man.    He may be like an old horse turned out into the street.    Your verdict may save him.    Give him an opportunity of earning an honest livelihood."

Again:

"Now, let me ask you, boys, mercy.
"*Mr. McCurdy:* I take an exception to the remark.
"*The Court:* Don't address the jury as 'boys.'"

As long as attorneys will resort to such methods, unjustifiable either in law or ethics, courts have no alternative but to set the verdicts aside.

Judgment reversed, and new trial ordered.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.    LONG, J., did not sit.