PEOPLE *v.* BOWEN.

1. CRIMINAL LAW—EVIDENCE—CONFESSION — PRIVILEGED COMMUNICATIONS.

   After the prosecution had introduced evidence of an alleged confession made by a respondent charged with the murder of his wife, and witnesses testified to the statements so made, respondent was entitled to testify to the whole of such conversation or admissions, including what he had told the witnesses concerning privileged communications passing between himself and the deceased wife.

2. SAME.

   The error was not cured by striking out the testimony of the first of such witnesses, leaving the testimony of the others standing.

Error to Newaygo; Cogger, J. Submitted April 18, 1912. (Docket No. 120.) Decided May 3, 1912.

Clyde Bowen was convicted of murder in the second degree. Reversed.

170 MICH.—9.

*William J. Branstrom*, Prosecuting Attorney, for the people.

*Dunham & Phelps*, for respondent.

STONE, J.   The respondent is charged with the murder of his wife on October 31, 1909, by cutting her throat. Under the plea of not guilty, the respondent sought to show that he was mentally irresponsible at the time he committed the act.   The case was here in 1911.   See 165 Mich. 231 (130 N. W. 706).   We then held that it was not competent, under the statute, for the respondent in his own behalf to testify to conversations that occurred between himself and wife on the occasion of, and immediately preceding, the homicide, as well as on other occasions, when they were alone.   Because of certain rulings in the admission of testimony the case was reversed and a new trial ordered.   A second trial has been had, which resulted in a verdict of guilty of murder in the second degree, and the respondent has been sentenced to imprisonment for life in the State prison at Jackson.   He has brought the case here on bill of exceptions and writ of error.

Upon the last trial of the case, the people produced and had sworn as witnesses William Duga, George Grow, R. D. Norwood, David Moot, and five other witnesses, all of whom testified to conversations between themselves and respondent or between other persons and respondent in their presence, after the arrest of respondent, concerning the taking of the life of his wife.

The questions involved arose upon the direct examination of respondent when called as a witness in his own behalf.   His counsel sought to show by him all that was said by him to and in the presence of the various witnesses of the people relating to the taking of the life of his wife. We shall refer principally to what occurred in respondent's examination relating to the testimony of William Duga. Duga was the turnkey of the county jail, to which place

the respondent was taken on the night of November 3, 1909. His testimony related to the claimed conversation in his presence between a newspaper reporter and respondent at the said jail on the night referred to. Mr. Duga did not pretend to give fully and in detail just what was said by the respondent to the newspaper reporter, but testified that he gave all that he could remember of such conversation. This newspaper reporter made a statement at the time, purporting to be a statement of the respondent, and Duga swore that the conversation or interview lasted about half an hour. The respondent, when produced as a witness in his own behalf, testified that he heard the testimony of the witness Duga, and the following took place:

"*Q.* Now, was there anything else said there by you that Mr. Duga didn't relate?

"*A.* Yes, sir.

"*Q.* What?

"*A.* You want me to tell what I said to the reporter?

"*Q.* Yes; while Mr. Duga was there.

"*A.* Well, Mr. Duga and the reporter came up there, came to my cell, and the reporter said to me—

"*Q.* I don't care about you going all through what the reporter said to you. If there was anything that took place in that conversation farther than Mr. Duga gave it, you may state it. What, if anything, did you say to the reporter more than Mr. Duga testified to?

"*A.* You want me to tell what I said to them there?

"*The Court:* He wants you to tell what you said that Mr. Duga didn't repeat.

"*A.* They asked me if I wanted to make this confession, that it wasn't right in the papers, and they said some things were not right in there, and I said they were not, and I went on and told them about it, and told them about going up to church on this here Sunday. Before that I told them the places where I had been; told them about going up to church on this Sunday, and about coming back, my wife getting up and going out into the—well, the classroom, Sunday school room. I got up and went out from there, started for home. We stopped at Charles Hefferan's. After we left Charles Hefferan's, we got down to the corner, and I said, I guess I will go home'—

"*The Court* (*interrupting:*) Leave out what you said between you and your wife.

"*A.* I was telling this to Mr. Duga and the reporter.

"*The Court:* Leave out what you and your wife said; don't repeat any of that between each other when you were there alone.

"*Q.* Are you stating now what you told to the reporter?

"*A.* I am stating now what I told to the reporter.

"*Mr. Dunham:* It don't make any difference whether your wife told it to you or you told it to your wife. I want you to tell all the conversation.

"*The Court:* No; any conversation between him and his wife when they were alone, although it may have been repeated to a reporter, I will not allow.

"*Mr. Dunham:* I will take an exception to that ruling. I submit, if you will just reflect a moment, that they cannot put in a part of a conversation and then say that we cannot have it all. It would be error. They cannot attempt to put in things that he said and then stop.

"*The Court:* The Supreme Court has said square toed that all conversations between this respondent and his wife, where they were alone, is incompetent."

A lengthy colloquy occurred between court and counsel, which it is unnecessary to repeat. It is sufficient to say that the learned circuit judge distinctly ruled that it was not competent or proper for the respondent to testify to anything which he said to the reporter in the presence of Duga, relating to any conversation between himself and his wife when they were alone immediately preceding the homicide. And he ruled that, because such communications were privileged, the respondent could not testify to what he had said to the reporter upon that subject, that it was an indirect way of getting before the jury privileged communications, to which ruling respondent's counsel excepted. After much debate upon the subject between court and counsel, the court finally ordered that the entire testimony of William Duga relating to any conversation or interview with the reporter in his presence in the jail should be stricken from the record, and the same was so stricken, to which counsel for respondent excepted. The

record does not disclose that these same questions were asked of the respondent relating to the testimony of the other witnesses named; but in the bill of exceptions it does distinctly appear that respondent's counsel stated to the court that certain of the other witnesses had testified upon the same subject, and the testimony of the other witnesses was allowed to stand.

It will not be necessary to notice all the assignments of error. The questions discussed are sufficiently raised in the following:

(1) The court erred in refusing to let the respondent testify to the entire conversations between himself and the witnesses William Duga, George Grow, David Moot, and others, after said witnesses had given what each of them claimed to be the conversation between himself and respondent concerning the taking of the life of respondent's wife by him.

(8) The court erred in ruling and deciding that the respondent could only testify to such statements as he made to the various witnesses on the part of the people, that did not include anything he said to them about what occurred between himself and his wife when they were alone, notwithstanding such talk was a part of the conversations between respondent and said witnesses, and concerning which conversations the said witnesses above named testified on the part of the people.

(7) The court erred in striking out upon its own motion the entire testimony of William Duga in the case.

The assignments of error raise two questions:

(1) Did the court err in refusing to allow the respondent to testify to the entire conversations between himself and the reporter and the witnesses William Duga, George Grow, and others.

(2) Did the court err in striking out the entire testimony of William Duga upon its own motion?

1. It is the claim of the respondent, and about this there seems to be no question from this record, that the testimony of the witnesses named was introduced on the part of the people as tending to show respondent's guilt from his own utterances or confessions, and that it is the rule

that, where this kind of testimony is introduced, it was proper to place before the jury the entire utterances of the respondent on those occasions as a whole. It is an elementary rule in the trial of criminal cases that, where a confession is introduced by the people, the accused has the right to require that the whole of the conversation containing it shall go to the jury, although, if the witness does not recollect all of the conversation, he may state what he does recollect, and its weight and sufficiency is for the jury. Where the prosecution puts in evidence a confession which is part of a conversation, the accused is entitled to prove as part of his defense the entire conversation. In 3 Wigmore on Evidence, at section 2113, the following language is used:

"For the reasons already sufficiently examined (*ante*, § 2094), the opponent, against whom a part of an utterance has been put in, may, in his turn, complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance. It has been seen, in the foregoing sections, that there is much opportunity for difference of opinion whether the proponent in the first instance *must* put in the whole. But there is and could be no difference of opinion as to the opponent's right, if a part only has been put in, himself to put in the remainder. Indeed, it is the very fact of this opportunity and right which (as already seen) has frequent bearing upon the question whether it is worth while to require it from the proponent in the first instance.

"This right of the opponent is universally conceded, for every kind of utterance without distinction; and the only question can be as to the scope and limits of the right. The ensuing controversies are in effect concerned merely with drawing the line so that the opponent shall not, under cloak of this conceded right, put in utterances which do not come within its principle and would be otherwise irrelevant and inadmissible. In a definition of the limits of this right, there may be noted three general corollaries of the principle on which the rights rest, namely: (*a*) No utterance irrelevant to the issue is receivable. (*b*) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is re-

ceivable. (*c*) The remainder thus received merely aids in the construction of the utterances as a whole, and is not in itself testimony."

The author then proceeds at considerable length to quote authorities under the above subheads.

The trial judge seemed to be of the opinion that to permit the respondent to testify to statements made to the reporter, which embraced his conversation with his wife, would be to get before the jury evidence of the fact of such privileged communications. Wigmore distinctly covers this ground in the language which we have quoted above under the subhead "*c*," and distinctly states that an utterance, regarded as an assertion of the facts contained in it, is merely a hearsay statement, and as such has no standing. It should be considered by the tribunal merely in order to piece out and interpret the first fragment, and ascertain whether as a whole the sense of the first becomes modified. What the respondent might have testified to relating to his conversation with the reporter would be no evidence of any conversation which he had with his wife when they were alone, but would be used in connection with the testimony of the people, and it would be for the jury to say, under proper instructions, whether the testimony of the respondent upon the same subject in any way qualified or modified the testimony of the people's witnesses. If it related to the same subject-matter as testified to by the people's witnesses, it would be relevant, and could not be said to be irrelevant merely because it would have been incompetent for him to have testified to conversations had with his wife when they were alone, on the ground that the same constituted a privileged communication. This view is supported by an abundance of authorities cited by Wigmore and other text-writers. 2 Chamberlayne on Modern Law of Evidence, § 1297. The rule has been well stated in this language:

"The statements or declarations of the accused in his own favor which are independent of the *res gestæ* of the

crime, and which are simply narrative in their character, are not relevant as part of his defense. An exception, however, is made where the prosecution introduces in evidence declarations of the accused which tend to incriminate him. The accused may then introduce that portion of the conversation of which those declarations form a part, which relates or is connected with what the accused said in the first instance, though it may be partly or wholly in his favor."

And, where admissions of the accused are offered, he has a right to have the whole conversation admitted, whether the same consists of self-serving statements or not; the test being whether they form a part of the conversation proved by the people. See cases cited in 12 Cyc. p. 462. *Commonwealth* v. *Trefethen*, 157 Mass. 180 (31 N. E. 961, 24 L. R. A. 235). The headnote upon this subject reads as follows:

"If a defendant is charged with crime, and unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence against him as an admission. If any part of a conversation with the defendant put in evidence tends to show, directly or indirectly, that he is guilty of the crime charged, the defendant has the right to have put in evidence all that was said to and by him at the same time, and relating to the same subject, although it is in his favor."

See, also, *Commonwealth* v. *Keyes*, 11 Gray (Mass.), 323; *Paulson* v. *State*, 118 Wis. 89 (94 N. W. 771); *State* v. *Napier*, 65 Mo. 462; *State* v. *Patterson*, 63 N. C. 520; *McAdory* v. *State*, 62 Ala. 154; *People* v. *Murphy*, 39 Cal. 52; *Hanrahan* v. *People*, 91 Ill. 142; *People* v. *Strong*, 30 Cal. 151; *People* v. *Farrell*, 31 Cal. 576; *Walker* v. *State*, 28 Ga. 254; *Bennett* v. *People*, 96 Ill. 602; *Parke* v. *State*, 48 Ala. 266; *Frazier* v. *State*, 42 Ark. 70; *People* v. *Yeaton*, 75 Cal. 415 (17 Pac. 544); *Johnson* v. *Powers*, 40 Vt. 611. Of course, parts of the conversation having no reference whatever to the issue upon trial are not admissible under the rule that a party is entitled to the entire conversation. The rule means only that he is entitled to the entire conversation bearing

upon the subject in controversy. This is well illustrated in *Atherton* v. *Defreeze*, 129 Mich. 364 (88 N. W. 886). We are persuaded that the exclusion of the evidence relating to the entire of this conversation was prejudicial error, resulting in withholding from the jury the entire statement made to the reporter upon the subject-matter in question.

2. In our opinion, this error was not cured by striking out the testimony of the witness Duga. It left standing the testimony of other witnesses. In fact, we think it would be a dangerous rule to permit the striking out of relevant testimony of one of the people's witnesses under the circumstances shown in this record. Under the well-settled rules of evidence, we feel compelled to reverse the judgment and sentence of the court below, and to order a new trial. The respondent should be remanded to the sheriff of Newaygo county, to be dealt with as the law directs.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.