PEOPLE *v.* HEPNER.

1. CRIMINAL LAW—CREDIBILITY OF WITNESSES—WAIVER OF JURY.
   Credibility of witnesses in the trial of a criminal case is a matter for the consideration of the trial court where the jury has been waived.

2. SAME—CONSPIRACY TO MURDER—WEIGHT OF EVIDENCE.
   Finding of guilty by trial court, sitting without a jury, on charge of conspiracy to murder *held*, against weight of evidence as to four of nine defendants convicted where sole evidence implicating such four was the unsupported and unsatisfactory testimony of a self-confessed felon which was contradicted by other evidence besides that of each of the four defendants who previously bore good reputations and evidence against them was no stronger than that against some other defendants who had been acquitted.

3. SAME—CONSPIRACY TO MURDER—WEIGHT OF EVIDENCE—NEW TRIALS.
   In prosecution of seventeen persons for conspiracy to murder a local newspaper publisher, in which one was released on an order *nolle prosequi,* seven were acquitted, conviction of four others reversed because against the weight of the evidence, where testimony against other five, in addition to that of a self-confessed felon is slight, new trials should be granted if even a slight error was made where question as to whether their conviction was against weight of evidence was a close one.

4. Same—Prior Confession—Introduction.

If prosecution introduces any part of a prior statement or confession of a defendant, it should introduce all relevant parts of it even though part of it is self-serving, or, at least, give defendant an opportunity to examine entire statement to determine whether or not he wants to introduce the balance on cross-examination of the witness testifying thereto.

5. Same—Conspiracy—Prior Statement of Defendant Claimed to be Insane.

Court's failure to require introduction of complete statement of a defendant, claimed to have been insane at time of trial and who did not take the stand for that reason, in a conspiracy trial, which statement implicated himself and five others, one of whom was acquitted, except upon compliance with terms of prosecuting attorney that he would permit defendants' attorney to examine such part as had not been introduced, if latter agreed to introduce it in evidence for such allegedly insane defendant *held*, reversible error as to such defendant and other co-conspirators implicated and convicted, where circumstances show that such defendant was in such a mental state that it cannot be assumed he was in a position to inform his counsel of the contents of that part of the statement, taken at 1:10 a. m., but 35 minutes before portion of statement introduced by prosecution, since the evidence was interlocking.

6. Same—Conspiracy to Murder—Statement by Codefendant—Evidence.

In prosecution for conspiracy to murder, statement of one codefendant, which implicated himself and five others, could not be introduced by codefendants on their own account where such statement was not offered by the prosecuting attorney.

7. Same—Object of Trial.

The object of a trial in a criminal case is to ascertain the truth and the prosecution should bring out all the facts in its possession, whether favorable or not.

Potter, Chandler, and McAllister, JJ., dissenting in part.

Appeal from Recorder's Court of Detroit; Brennan (John V.), J. Submitted April 14, 1938. (Docket No. 118, Calendar No. 39,778.) Decided October 3, 1938. Rehearing denied November 10, 1938.

Roy Hepner, Alois Clark, Frank Howard, Rudy Wellman, Arthur Lupp, N. Ray Markland, Willard Foster, Mathias Gunn and Hubert James were convicted of conspiracy to murder. Reversed and new trial granted.

*Ben H. Cole* and *Kugel & Cale,* for appellants.

*Raymond W. Starr,* Attorney General, *Duncan C. McCrea,* Prosecuting Attorney, *William E. Dowling* and *William L. Brunner,* Assistant Prosecuting Attorneys, for the people.

Butzel, J.   Appellants and others were charged with conspiracy to murder one Arthur Kingsley, of Highland Park, Michigan.   The case was heard by a judge of the recorder's court of the city of Detroit without a jury.   Seventeen defendants were originally named in the information.   Of these, one was released on an order *nolle prosequi,* and seven were acquitted.   The remaining nine were found guilty and they have appealed.

Plaintiff claims that the defendants, as members of an organization, conspired together for the purpose of killing Kingsley, a publisher of a Highland Park newspaper, who was consistently criticising and opposing the candidacy of one of the defendants, N. Ray Markland, who was running for mayor. As the prosecution admits, the story is almost incredible and the acts of the various defendants almost unbelievable, were it not, as they claim, for the positive, direct and interlocking testimony of the people's witnesses and the defendants themselves.   Defendants claim that the findings of the trial court were against the great weight of the evidence.   The record has been examined with very great care.   The case resembles somewhat that of

*People* v. *Pettijohn,* 283 Mich. 108, and the rule therein set forth, that the jury is the judge of the credibility of the witnesses, is also applicable where the case is tried by a judge alone, a jury having been waived.   In *People* v. *Pettijohn, supra,* the judgment of conviction was sustained notwithstanding the attack on the credibility of four witnesses whose character was impeachable because of conviction for major crimes.   We sustained the conviction because the jury believed their testimony with the other supporting evidence.   The situation in the instant case is materially different.   One of the four witnesses in *People* v. *Pettijohn, supra,* was Dayton Dean, whose testimony would have been difficult to believe had it not been supported by that of other witnesses and by other evidence.   Dayton Dean again appears in the instant case as the main witness, and, as to certain defendants, the only one for the prosecution.

The sole evidence implicating defendants Foster, Gunn, James and Wellman was the testimony of Dean who is serving a life sentence for murder. Each of these four defendants took the stand and denied Dean's testimony *in toto.*   His story is further weakened by contradictions and the conflicting testimony of other witnesses.

Dean testified that Foster gave him a gun and was present at five meetings of the defendants at which plans were made to kill Kingsley.   The chief of the Highland Park fire service testified from his records that on one of the dates mentioned by Dean, Foster was under orders to remain on call at his home.   Foster testified that he had remained at home on that occasion.   Dean named other defendants as also being present at three of the meetings, yet these others were acquitted.   Foster is an honorably discharged veteran, having served overseas

during the war. He had never been previously arrested and three character witnesses testified in his favor.

The evidence against defendant Gunn is particularly weak. Dean testified that Gunn drove him to meet a Highland Park police scout car on Second boulevard, where Dean made arrangements for an escape with two police officers. These two officers were defendants in this case. They denied ever meeting Dean and were acquitted. Dean testified that on several occasions he followed Kingsley in an automobile, intending to kill him, but that Kingsley evaded him. At the trial Dean claimed that Gunn drove the automobile. Yet at a previous hearing, he had stated that he did not recall who was driving. Dean testified that on one occasion, he had given Gunn his .45 revolver to take home and that Gunn later told him that he had accidentally fired it into a washing machine so that it ricocheted around the tub and burned his arm. A ballistics expert who examined the machine testified that it bore no marks showing that a gun had been fired into it, and furthermore, that a .45 bullet could not ricochet in the manner claimed. Neighbors of Gunn testified that they had heard no noise. Gunn told a straightforward story on the witness stand and character witnesses showed that he was a man of good standing in the community where he had lived the greater part of his life.

Dean claimed that defendant James had been with him on several occasions when they attempted to find and kill Kingsley, yet he admitted on cross-examination that he had previously stated that he did not remember who went with him. The principal of a night school testified from his records that James was in school on one night that Dean testified that James was with him. Dean asserted that

James showed him a hole under the back seat of the car in which they could hide the gun after the murder. A garage man testified that he had made the hole for the purpose of making repairs. A police officer, who testified in regard to the hole, admitted that Dean did not know of the hole until after James was arrested. No part of this officer's testimony connected James with the conspiracy.

Dean had made prior statements contradicting his testimony against defendant Wellman. Dean testified that Wellman came to Pontiac to pick up Dean at the police station there, where he had been talking with defendant Pierce. Pierce denied meeting Dean or Wellman in Pontiac and was acquitted. Both James and Wellman bore good reputations and their good character was testified to by several witnesses.

We, therefore, have four defendants denying Dean's unsupported and unsatisfactory testimony implicating them. Surely a man's previous good reputation should stand in his favor when he takes the witness stand and denies the accusations of a self-confessed felon, unsupported and contradicted by other evidence. We are particularly impressed with the fact that the evidence against these four defendants who were convicted was no stronger than that against some of the other codefendants who were acquitted. The finding against defendants Foster, Gunn, James and Wellman was against the weight of the evidence and must be reversed.

Against the defendant Howard, there is some other testimony besides that of Dayton Dean. One witness testified that Howard told him that he was to kill Kingsley and gave him $50 for expenses. Another witness stated that Howard had said to him, "You know * * * what is going to happen to Mr. Kingsley." In the case of defendant Markland,

Kingsley testified that Markland had threatened him. Another witness testified that Markland told him that he would secure a job for him if he would kill Kingsley. In the case of defendant Clark, other witnesses besides Dean implicated Clark in the activities which the prosecution connected up with the conspiracy. In the case of defendant Lupp, the witness Smith testified that Lupp told him that he was to kill Kingsley and gave him a gun for that purpose. Later Lupp "bawled out" Smith for failing to kill Kingsley. Another witness testified that Lupp was at a meeting which the prosecution claims was held in connection with the conspiracy. There is similar support for the evidence against defendant Hepner. All of these defendants, except Hepner, took the stand and denied guilt and there is some evidence to support their denial. Other witnesses testified to their good character. While the evidence against them is sufficient to support a conviction, nevertheless, in view of the closeness of the question of whether the conviction is not against the weight of the evidence, even a slight error may have had a determining effect against them. If there is such, they should have a new trial.

Counsel for defendant Hepner have consistently claimed that he was insane at the time of the trial and not competent to be tried. For that reason, he did not take the stand in his own behalf. A stenographer, called as a witness by the prosecution, produced a statement that he took from Hepner on June 12, 1936, at the office of the prosecuting attorney at 1:45 a. m. Hepner's statement implicated him in the conspiracy, and also defendants Clark, Howard, Markland and Lupp, as well as another who was acquitted by the trial judge. Upon cross-examination of the stenographer, it developed that Hepner had made other statements which were

taken down by the witness. One taken at 7:50 p. m. of the evening before and another at 1 a. m. were not relevant to the case. However, a statement was taken at 1:10 a. m. only 35 minutes prior to the taking of the statement which was introduced in evidence, and this statement was admitted to be relevant to the instant case. When this fact was brought out, the attorneys for the defendants asked the court to order the witness to transcribe the other statement. The court ruled that it would do so if the attorneys kept themselves within the rules of the Supreme Court of the State of Michigan. The following day, the prosecuting attorney stated that he had learned for the first time, through the cross-examination of the stenographer, of the existence of the prior statement, that he had had it transcribed and that he was willing to submit it to the counsel for the defense on condition that they introduce it in evidence for the defendant Hepner. One of the attorneys for the defendants objected contending that the way to introduce the statement was on the examination of the stenographer who took it, and that he would not be willing to receive the statement on the conditions imposed. The court did not order the statement to be introduced and stated only that the Supreme Court of the State set forth the proper way to introduce the statement.

The demand of the attorney for the defendants was proper. If the prosecution introduces any part of a prior statement or confession of a defendant, it should introduce all of it. *Walters* v. *State,* 156 Md. 240 (144 Atl. 252). The whole statement should be introduced in evidence even though part of it is self-serving. *People* v. *Bowen,* 170 Mich. 129; *State* v. *Dunkley,* 85 Utah, 546 (39 Pac. [2d] 1097); *State* v. *Netherton,* 128 Kan. 564 (279 Pac. 19). The 1:10

statement was relative to the case and made within 35 minutes of the statement introduced in evidence. The former contemporaneous statement may be considered an integral part of the latter and admissible as such. In *State* v. *Netherton, supra,* the defendant had been orally questioned for several days and finally a written statement was taken. The sheriff testified as to the oral statements. It was held that if the written statement dealt with the same subject-matter, it was admissible as part of the cross-examination of the sheriff:

It has been held that the prosecution need not introduce the entire statement provided the defendant is given an opportunity to do so if he wishes. *Ingram* v. *State,* 120 Tex. Crim. Rep. 8 (47 S. W. [2d] 285). However, the defendant must be given an opportunity to examine the entire statement to determine whether or not he wants to introduce the balance on cross-examination of the witness testifying thereto. *Board* v. *State,* 122 Tex. Crim. Rep. 487 (56 S. W. [2d] 464). In the instant case, the prosecution did not tender the statement for examination but offered it only on condition that defendants introduce it in evidence.

The prosecution contends that Hepner must have known what was in his statement, and, therefore, it was not error to refuse to permit counsel to examine it, citing *People* v. *Parisi,* 270 Mich. 429. However, it was shown that on the same day that Hepner made his statement he was removed to the Receiving Hospital of the city of Detroit and a physician there certified that he was insane. Another doctor, who had examined Hepner a few weeks before, testified that he had a contusion on the vertex of his skull; that Hepner stated that he had suffered the head injury from a fall from a step-

ladder a few days prior to the examination; and that there was very definite evidence of psychoneurosis. A sanity commission appointed to investigate the mental condition of Hepner reported before the trial that Hepner was mentally unstable, but sane and competent to be tried. It was stated that Hepner claimed to be unable to remember what had taken place between the time of his arrest and his release on bail. From these facts, it cannot be assumed that Hepner was in a position to inform his counsel of the contents of the statement. *People* v. *Parisi, supra,* is clearly distinguishable. Hepner's complete statement should have been introduced by the prosecution, or unconditionally tendered to defendants' counsel for examination. Failure to do so was error for which the conviction of Hepner must be reversed.

Hepner's 1:45 a. m. statement also implicated defendants Clark, Howard, Markland and Lupp. It is true that Hepner's codefendants could not have introduced Hepner's statement in evidence on their own account. *Cole* v. *State,* 104 Tex. Crim. Rep. 533 (286 S. W. 204). Nor was the prosecution under obligation to introduce it in the first place. However, the prosecution did see fit to introduce part of the entire statement. They must have considered Hepner worthy of belief and his statement evidence of weight in the case. If part of Hepner's statement is worthy of belief, why not all of it made at approximately the same time and under the same conditions? The text of the 1:10 a. m. statement is not in the record. It may be more favorable to the defense than to the prosecution. However, the object of a trial is to ascertain the truth, and the prosecution should bring out all the facts in its possession, whether favorable or not. *People* v. *Dellabonda,*

265 Mich. 486. While the prosecution is not bound to introduce self-serving statements of a defendant, if it introduces part of a statement, it should introduce all or at least give the defense an opportunity to examine the entire statement. This is a conspiracy case. In order to ascertain the truth all relevant and competent evidence should be presented to the jury, or the judge, if a jury be waived. The evidence of the respective parties was quite evenly balanced and a slight amount more, in defendant's favor, might have been sufficient to prevent the overthrow of the presumption of their innocence and to have created a reasonable doubt of their guilt. Such being the case, it was error to refuse to permit counsel for defendants Clark, Howard, Markland and Lupp to cross-examine the stenographer so as to bring out Hepner's entire statement. The error was not cured by plaintiff's offer to permit defendants' counsel to introduce the statement. While the trial judge stated that he considered the statement only in determining the guilt of Hepner and not the others, it was a conspiracy case, in which, as stated by prosecuting attorney in his opening statement, the evidence was interlocking and if believed in regard to one conspirator, it might have had some effect in determining the guilt of co-conspirators.

Defendants Foster, Gunn, James and Wellman are entitled to a new trial because their conviction was against the weight of the testimony. The other defendants are entitled to a new trial because of the error in excluding the statement.

The case is remanded for a new trial.

WIEST, C. J., and BUSHNELL, SHARPE, and NORTH, JJ., concurred with BUTZEL, J.

Potter, J. (*dissenting in part*). I agree this case should be reversed as to the defendant Roy Hepner.

The people introduced a statement said to have been made by Hepner to a stenographer at 1:45 a. m. This statement was transcribed by the stenographer and introduced in evidence. It was admitted defendant Hepner had made another statement at 1:10 a. m. the same day to the same stenographer. This statement was transcribed by the stenographer but excluded by the trial court. Defendant did not for this reason have such a fair trial as he was entitled to.

The statement introduced was competent, if at all, on the basis of an admission or declaration of defendant. It was the duty of the prosecutor to produce both of these statements alleged to have been made by the defendant and to lay them before the trier of the facts whether their tendency was to establish the guilt or innocence of the accused.

"The only legitimate object of the prosecution is, 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community." *Hurd* v. *People,* 25 Mich. 405, 416.

"It has long been the settled law of this State, at least since the case of *Hurd* v. *People,* 25 Mich. 405, that a prosecuting attorney is not at liberty, in the trial of a criminal case, to select and call only such

witnesses as are most favorable to the prosecution, when there are others who are in a situation to know, and do in fact know, as much about the transaction. The only legitimate object of the prosecution is—

" 'To show the whole transaction as it was, whether its tendency be to establish guilt or innocence.' " *People* v. *Etter,* 81 Mich. 570.

"As explained in *Hurd* v. *People,* 25 Mich. 405, and in the English cases there referred to, a public prosecutor is not a plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty, and he has no right to suppress testimony." *Wellar* v. *People,* 30 Mich. 16, 23.

"It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so." *People* v. *Swetland,* 77 Mich. 53, 57.

"The duty of the prosecuting attorney is not discharged with the mere production of the witness. As is said in *People* v. *Swetland:*

" 'It is the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so.' " *People* v. *Germaine,* 101 Mich. 485.

If it was the duty of the prosecuting officer to furnish as a part of the people's case and lay before the trier of facts both the statements alleged to have been made by the defendant Hepner, he did not discharge that duty in presenting one statement and suppressing the other. All legitimate presumptions were against the people if they failed to produce such testimony. Every intendment should be in favor of the opposite party. *Cole* v. *Railway Co.,* 81 Mich. 156; *Griggs* v. *Railway Co.,* 196 Mich. 258; *Brandt* v. *C. F. Smith & Co.,* 242 Mich. 217; *Barber-Greene Co.* v. *Proksch,* 251 Mich. 329.

In any event, the defense should have been permitted a full and searching cross-examination in relation to the statements alleged to have been made by the defendant. *People* v. *Liphardt,* 105 Mich. 80. The rule as to testimonial completeness is the same as to statements oral or written. Parts of a written statement having no reference to the issue on trial are not admissible under the rule that a party is entitled to the entire statement. The rule means only that he is entitled to the entire statement bearing upon the subject in controversy. Parts of a conversation having no reference whatever to the issue upon trial are not admissible under the rule that a party is entitled to the entire conversation. The rule means only that he is entitled to the entire conversation bearing upon the subject in controversy. *Atherton* v. *Defreeze,* 129 Mich. 364. *People* v. *Bowen,* 170 Mich. 129, was reversed for a violation of this rule. The court quoted with approval Wigmore's statement that the "right of the opponent is universally conceded, for every kind of utterance without distinction," (3 Wigmore on Evidence [1st Ed.], § 2113) and the court approved the limitation upon the right as follows:

"In a definition of the limits of this right, there may be noted three general corollaries of the principle on which the rights rest, namely: (a) No utterance irrelevant to the issue is receivable. (b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable. (c) The remainder thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony."

This is the rule in 2 Chamberlayne on Modern Law of Evidence, § 1297.

"Where admissions of the accused are offered, he has a right to have the whole conversation admitted,

whether the same consists of self-serving statements or not; the test being whether they form a part of the conversation proved by the people." *People* v. *Bowen, supra.*

There, the court approved the language of *Commonwealth* v. *Trefethen,* 157 Mass. 180, 197 (31 N. E. 961, 24 L. R. A. 235), that "if any part of a conversation with the defendant put in evidence tends to show, directly or indirectly, that he is guilty of the crime charged, the defendant has the right to have put in evidence all that was said to and by him at the same time, and relating to the same subject, although it is in his favor."

Defendant's counsel were entitled under the facts as disclosed by this record to the production, and an opportunity to examine, both of the statements alleged to have been made by the defendant Hepner which were transcribed by the stenographer to whom they were made and in the possession of the prosecuting officer. *People* v. *Dellabonda,* 265 Mich. 486.

For suppressing one of these statements alleged to have been made by the defendant Hepner, not presenting it to the court and to counsel for the defendant, and denying cross-examination in relation thereto, the case should be reversed as to the defendant Hepner. Affirmed as to other defendants.

Chandler and McAllister, JJ., concurred with Potter, J.