Willie Grove, Tommie Lee Walker and
Robert Lee Walker

*v.*

State of Tennessee.

365 S. W. 2d 871.

(*Nashville,* December Term, 1962)

Opinion filed February 7, 1963.

Rehearing Denied March 28, 1963.

Hugh Stanton and William E. Cleaves, Memphis, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, Nashville, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error along with one, Dewey Davis, were indicted for armed robbery. Dewey Davis was acquitted. Grove was sentenced to serve ten (10) years in the penitentiary; Tommie Lee Walker was sentenced to serve fifteen (15) years in the penitentiary; and Robert Lee Walker was sentenced to serve fifteen (15) years in the penitentiary.. From these convictions these three parties have seasonably appealed. Able briefs have been filed and arguments heard, and after spending considerable time in reading this long record, which consists of four volumes and close to twelve hundred pages, and studying the authorities, we have the matter for disposition.

On the night of July 29, 1961, which was a Saturday, the Ham-Kirk Drivein Grocery in Memphis was robbed of an amount of money in excess of $500.00. This robbery was committed between 11:30 and 11:40 on this night. This Drivein Grocery is one of those grocery stores that stays open very late at night and is just what it says, a

drivein, where the front of the store opens up and people can be seen therein making their purchases. At the time of this robbery there were some four or five patrons in the store making purchases. The store at that time was being run by one, Garzoli. As Garzoli was about to take the payment for certain groceries from one of his customers, he was confronted by two colored boys with white handkerchiefs over their faces, that is, covering from the nose down, and one of these boys pointed an automatic pistol at him and said "Give it up, fat boy." Then he was told by the other boy, "Open it up", meaning the cash register. Garzoli opened it up and with the help of one of these boys stuffed the money, including pennies, change and things like that into a paper sack which one of these boys had. These two boys immediately turned and ran from the store. As soon as they ran away Garzoli phoned the police and told them that he had been robbed.

One of two colored boys working in the store then ran out the way the robbers had run, then came back to the store and got his car and followed what he thought was the car in which these boys were that had robbed the store. The car he was following was later identified by him as a 1952 Mercury. This car as it sped up the street contained four colored men.

After this report was made to the police they put out a notice to all patrol cars, and about 12:00 o'clock a police patrol saw Grove sitting in a 1952 Mercury, parked on a lot in the front of a barber shop at Castalia and Boyle Streets in Memphis, which was a little over two miles from the scene of the robbery. The officers investigated and decided that Grove was not the one wanted and re-

leased him. A few minutes later Grove was stopped by another patrol car and held until officers who were investigating the crime came to talk to him.

The robbery was investigated by four colored detectives. Between 12:30 and 1:00 o'clock on Sunday morning of the 30th after making a number of inconsistent statements which were noted by the officers, and being advised by the officers that his car was seen leaving the scene Grove admitted the robbery to Officer Turner. Grove gave the officers the names of his companions. Tommie Lee Walker was arrested at 2:30 A.M. at his home, Dewey Davis was arrested at 3:45 A.M. at his home, and Robert Lee Walker was arrested at 6:00 o'clock in the morning at the home of and in bed with a girlfriend.

Robert Lee Walker, Tommie Lee Walker and Dewey Davis denied participation in this robbery until they were confronted with Willie Grove who about 6:30 in the morning told them that he had told the officers about the robbery and had told them that they had all been engaged in it. After this then they all admitted it. The accounts of the robbery were reduced to writing and signed by the defendants in the presence of the white Captain of the Police Department on Sunday following the robbery.

On Sunday morning following the robbery there was a line-up held at the police department at which Robert Lee Walker was identified by the cashier of this grocery, Garzoli, as the one with the gun. This identification was made by a red shirt and blue pants that Robert Lee Walker had on, and which had been described to the police before. He had on this same outfit in the line-up. Immediately after the line-up Garzoli and two of the boys who worked there in the store and two or three customers who

were present at the line-up went up into another room where the defendants were all present with officers, and there discussed their participation in the robbery. All these witnesses, that is the storekeeper, the patrons in his store and the delivery boys testify very positively that the statements given by the defendants appeared to have been voluntarily made and that none of them appeared to have been mistreated or coerced.

As a matter of fact in this large record, one reading the first 156 pages of Volume I finds sufficient evidence, if it is believed by the jury, to convict each of these plaintiffs in error. In this evidence there is the evidence of Garzoli, one or two of the patrons and the colored boys who were working there. They made some identification by the red shirt and the blue pants, and then this boy definitely identifies this car in which Grove was found sitting later as the car in which these four men were going up the street near where the robbery had happened shortly after the robbery. Then, at this line-up and in the room where they all went after the line-up they testify that Grove made statements in their presence, and in the presence of the other defendants, accusing the others of the commission of this crime. This accusation was not denied by any of the others. Thus it is, that under this kind of situation there would be ample evidence to convict them all if the jury believed it.

Suffice it to say that in the confessions and in the statements made they all say that Dewey Davis had nothing to do with it except he was along for the ride. There is some evidence that the gun which was used belonged to the father of Dewey Davis, but in Dewey Davis' confession and in the statements of others it is said that he

didn't know anything about it until after the robbery had taken place. It is probably for this reason that the jury acquitted him. Another statement that should be made by us at this time is that in the cross-examination of all State's witnesses they were each subjected to cross-examination by three good lawyers and thus it is that there was no stone left unturned in ferreting out the question of guilt or innocence of these parties through this cross-examination conducted in an excellent and fair manner. We make this observation merely to show that the jury had an ample opportunity through the cross-examination by defense counsel as well as some of their own questions to determine the guilt or innocence of these parties, and as to whether or not the confessions which were reduced to writing and signed by each of them on Sunday following the robbery were due to coercion and force, or whether the confessions were involuntarily or voluntarily made.

Another thing that should be commented on here, too, is the fact that after Officer Turner had testified and answered certain questions about coercion, beating with night sticks and things of that kind, the jury was excused and the trial court heard the evidence pro and con as to whether or not these statements were voluntarily and freely made or were produced by hope of reward. After hearing this testimony the trial judge made a very clear, fair and frank statement, which shows no doubt whatsoever in his mind that the confessions of these four people "were freely and voluntarily made; that the same defendants, Willie Grove, Tommie Lee Walker, Robert Lee Walker and Dewey Davis, were not influenced by any hope or offer of reward; that no coercion or threats were used and no promise of immunity made." After this for

many, many pages the trial was conducted on this feature of the thing before the trial judge and his finding was made thus; then the trial proceeded by the introduction through the white Police Captain of the written confessions and then the State closes and these various defendants took the witness stand along with their witnesses and they attempted to establish alibis. This, of course, was all offered before the jury after the trial judge had concluded as above, and he then let all of this go to the jury as to whether or not there was coercion, fear or beating or whatnot, and the jury then had the additional opportunity to, and did, properly pass upon these questions.

 When the defendants took the stand they each denied any participation in the robbery and stated at length that they were beaten severely and repeatedly until they confessed. This on rebuttal was denied by the respective officers. It was likewise shown on rebuttal by reporters from at least the two leading newspapers in Memphis, one of whom had been on the police beat for some forty years, that on the day following this robbery these reporters as well as others had appeared at a press conference where television pictures, etc., were taken of these four defendants, and that these reporters talked to each of these defendants and that these defendants admitted to them there that they had committed this robbery. These reporters likewise say they saw no evidence whatsoever, nor was any complaint made of any beating, coercion or anything of that kind. When the various defendants took the stand they absolutely said that everybody who had testified for the State, including the reporters and various officers, were lying about it. Obviously the trial judge and the jury had before them these very conflicting statements; on the one hand that the

statements of these various people as to what had happened and that the confessions made as to this robbery were voluntary, and, on the other hand, the four colored boys who were defendants herein saying that all these other people had told a falsehood about it. It thus clearly presents the most obvious case where the facts as presented by the different witnesses are directly in conflict, and these witnesses are seen by the trial judge and jury and they in turn have made up their mind as to who is telling the truth about it. Under such a situation and after having read this record, we clearly cannot say that the evidence preponderates against this finding. If there ever was a case where the factual situation should be left to the trial judge and jury it is under a factual situation as presented by this record. We will not disturb their findings. This, of course, goes to the factual situation of the robbery as well as to the proposition raised by the defendants that the confessions were obtained as the result of physical force exerted by the police. Both of them concededly make a fact question which has been properly submitted to the jury. We in this State, as do most states, follow the practice based upon the principle that the voluntary or involuntary character of a confession is a question of law to be determined by the trial judge adduced from the facts in the first instance. *Boyd v. State,* 21 Tenn. 39, and other cases that may be found by Shepardizing this. After the trial judge reaches his conclusion which he does not determine beyond a reasonable doubt, that is, that the confession is voluntary, then as to the credibility of the witnesses and things of that kind, and the weight to be given their testimony, these are matters that lie clearly within the province of the jury after the confession has been admitted as voluntary.

The interesting legal proposition presented by this lawsuit, which is of first impression as far as has been cited to us in this State, is whether or not the defendants can introduce a number of confessions of other crimes that have nothing to do with the crime with which they are charged here for the purpose of showing that the confessions made in this case were coerced or forced through beating or otherwise. A number of pages of the record and briefs and arguments through the record are of help and they show through this record that the trial judge in passing on the matter had the question before him as thoroughly as it possibly could be presented. After this question was presented and argued, and counsel investigated the authorities on it, the trial judge ruled thus:

"The guilt or innocence of any other crimes, as of this time, are not relevant and the court doesn't want to go into them."

The argument of the plaintiffs in error is that they could prove in each of these other crimes that they confessed to that they did not commit these crimes and they, in the absence of the jury, "did introduce some evidence designed to support such an alibi." The State did not introduce any contradictory evidence but relied on the clear legal proposition that the defendants could not conclusively establish that they did not commit the other crimes. The plaintiffs in error argue that they can prove where they were when the other crimes were committed and that this would tend to show that their confessions in regard to the present robbery was obtained as the result of coercion, etc. On a related question this Court speaking through the late Chief Justice Green in *Rounds v. State*, 171 Tenn. 511, at page 519, 106 S.W.2d 212, at page 214, said:

"Where a confession indicates that the accused has been guilty of another offense in addition to that for which he is being tried, that part of the confession relating to the distinct offense is inadmissible if it can be separated from the portion of the confession relating to the charge in issue." Citing authorities.

■ Generally the proposition is received by the courts in reverse, that is, where the State is attempting to prove other crimes in an effort to convict. It is well settled in that kind of situation that evidence that accused has committed another crime independent of and unconnected with the one for which he is on trial is inadmissible. In the present case it clearly appears that these other confessions of other crimes were entirely separable and separated. None of these offenses tends in the slightest degree to prove the other or the offense charged. There is no nexus between any of them.

■ Both the plaintiffs in error and the State have found and cite one case, that is, *Grove v. State,* 1946, as reported in 185 Md. 476, 45 A.2d 348. This case has certain statements in it with which we absolutely agree and to our mind are conclusive on the proposition that the plaintiffs in error are not permitted to show that these other confessions were false and thereby to try to show that the confessions here were induced by coercion. In this Grove case the man there was indicted for setting fire to a certain building. He confessed to this. He likewise made a separate confession to another fire. The court in its opinion says this:

"The sole contention of traverser is that his confessions concerning other fires than the one for which he was on trial should have been admitted in evidence,

. because all of the confessions constituted one conversation, and that the alleged falsity of the confessions, that traverser set fire to other buildings than the one for which he was being tried, tended to cast doubt upon the truth of the confession of the crime charged in the indictment."

██ It is shown though in this case that these confessions were separate, and the man made no contention that the confession as to the fire for which he was being tried was not voluntary. That court goes on and quotes from the contention of Grove that it was error not to allow him to show that "the confessions in the other fires to be false and untrue as reflecting upon the weight or credibility to be given to the confession and statement made in this case, the McEwen fire." The Maryland court rejects this argument on sound authority, citing from Underhill's Criminal Evidence, 4th Ed., page 513, and Wharton's Criminal Evidence, 11th Ed., sec. 598-606. That court likewise quotes from *People v. Bowen,* 170 Mich. 129, 135 N.W. 824, 827, to the effect that parts of a conversation which have no reference whatever to the issue upon trial are not admissible under the rule that a party is entitled to the entire conversation. "The rule means only that he is entitled to the entire conversation bearing upon the subject in controversy." Then the Maryland court quotes from the state's brief and approves this quotation as the correct rule of law, which we likewise approve as applicable under our practice in this State. This quotation, as approved by the Maryland court, is:

"Evidence that a confession of another crime was false would not tend to prove that the confession of the crime charged in the indictment was likewise false. Such evidence would establish only the falsity of the

confession of a crime for which the accused was not on trial and would be wholly irrelevant to the issue and, hence, inadmissible. In order to determine the truth or falsity of the confessions of the other crimes, the court would be called upon to receive evidence concerning offenses not charged in the indictment in this case. The practical effect would be that the State, in order to prove one case, would be required to establish the appellant's guilt in four cases."

In the January issue of the Reader's Digest beginning at page 121 there is an excellent, very authoritative article entitled, "The Right to Trial by Jury". One paragraph from that article very succinctly states a correct proposition as to how juries feel under a factual situation developed herein and relied on particularly by the plaintiffs in error. That paragraph is:

"Finally, it is juries that provide our principal, effective protection against any tendency of over zealous police officers to obtain evidence by third degree methods. For jurors resent the extorted confession and tend to acquit whenever they see signs of police brutality."

█ Counsel for plaintiffs in error likewise made the proposition that since these men have been indicted for a crime in which capital punishment could be inflicted upon them and since they were indigent therefore the court should have taxed the State with at least $250.00 of the amount necessary to hire a court reporter for this large record. The authority for this proposition is based upon sec. 40-2010, T.C.A. In the first place it is true that the trial court charged the jury the law on the maximum under the crime here charged, but the District Attorney General in

charge of the prosecution did not insist upon the infliction of capital punishment. Therefore, since he did not insist upon the infliction of capital punishment, it was not error for the trial court, because it was within his discretion, to fail to appoint a court reporter. See *Tucker v. State,* 210 Tenn. 646, 361 S.W.2d 494. The man did have a court reporter and whether or not the trial judge appointed one was clearly within his discretion. The facts here do not show that such a discretion was abused.

After a very careful consideration of this big record, authorities, able argument made in the brief, which almost convinced us of the factual position of the plaintiffs in error until we had read the record, the judgments below must be affirmed.

### On Petition to Rehear

Counsel for the plaintiffs in error have filed herein a very courteous, dignified and respectful petition to rehear.

This petition raises one question that we failed to mention, which was assignment of error Number Four made in the original assignments filed in this Court. This error here referred to was an error that was assigned to the trial court's action in refusing counsel for the plaintiffs in error the right to cross-examine one of the officers as to his taking confessions from the defendants of other crimes, which, it is alleged in the assignment, were shown to be false, because unimpeachable alibis were established. It is said that this was very relevant to the free and voluntariness of the confession.

We do not necessarily in opinions take up each assignment seriatim. It should be the purpose, and it is

the purpose, in writing opinions in criminal cases in the first place to see that no reversible action has been taken in the trial court, and where alleged reversible action is taken to answer this proposition. It was our thought that the proposition now raised on the petition to rehear is in effect answered in the original opinion of this Court beginning in the last paragraph on page 10 of the opinion [page 875 of 365 S.W.2d]. The present question raised is to all intents and purposes so tied up and interlocked with what we have said in the next few pages beginning at the bottom of page 10 of the opinion [page 875 of 365 S.W.2d] that it is impossible to separate the present question raised from what is said in our opinion. We to our satisfaction, and believing what we have said in the original opinion on this question to be the law, concluded that this type of evidence was not competent. We think, too, that this type of procedure as approved in our original opinion gives the plaintiffs in error a fair trial.

If this assignment of error was sustained and counsel permitted to cross-examine an officer, or one taking confessions, as here contended for, this would open up a field wherein there would be no end. Many different cases would have to be tried in one wherein the facts pertaining to them are not at all pertaining to the case on trial. Such a ruling is not unfair to the plaintiffs in error, because the facts of the particular case wherein they are charged with a crime are the facts that are admissible in that trial and not facts of other cases. This was all properly considered and properly ruled on by the trial court.

Thus it is with the utmost respect and admiration for counsel who have given their all for these plaintiffs in

error in these particular cases and who have rendered such a great public service in defending the indigent that we respectfully disagree and hold that there was no error by the trial court in this matter. Thus it is that the petition to rehear herein is overruled.